**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 21, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TINGKOS TIMOTEUS SIDABUTAR,
and MONA LISA SIRONGO RINGO,

Petitioners,

v.

ALBERTO R. GONZALES, United
States Attorney General,

Respondent.

No. 06-9576

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE BOARD OF IMMIGRATION APPEALS**
**(AGENCY FILE NOS. A96-351-563/564)**

---

Submitted on the briefs

Armin A. Skalmowski, Alhambra, California, for Petitioners.

Jesse Lloyd Busen, Attorney (Emily Anne Radford, Assistant Director, with him
on the brief) Office of Immigration Litigation, Department of Justice,
Washington, D.C., for Respondent.

---

Before **HENRY**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.[*]

---

[*] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

**TYMKOVICH**, Circuit Judge.

---

Tingkos T. Sidabutar and Mona Lisa S. Ringo, both natives and citizens of Indonesia, filed a petition for review challenging a Board of Immigration Appeals' (BIA or Board) final order of removal following the denial of their application for asylum, restriction on removal under 8 U.S.C. § 1231(b)(3),[1] and relief under the United Nations Convention Against Torture (CAT). The petitioners are married, with Sidabutar serving as the main applicant for asylum and Ringo as a derivative applicant. *See* 8 U.S.C. § 1158(b)(3). An immigration judge (IJ) denied their applications, which the BIA affirmed.

In this petition, they assert five claims: (1) the BIA improperly engaged in de novo factfinding in concluding Sidabutar did not suffer "past persecution" for purposes of seeking a restriction on removal, (2) Sidabutar in fact suffered "past persecution" entitling him to restriction on removal, (3) Sidabutar also met the clear probability of future persecution for restriction on removal, (4) the BIA engaged in improper de novo factfinding in determining that Sidabutar failed to

---

[1] While both parties refer to this provision as "withholding of removal," amendments to the Immigration & Naturalization Act made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) changed the terminology to "restriction on removal." *See* 8 U.S.C. § 1231(b)(3); *Yong Ting Yan v. Gonzales*, 438 F.3d 1249, 1251 n.1 (10th Cir. 2006). Since this case arose after the effective date of the IIRIRA, we refer to this provision as "restriction on removal."

show that he could not relocate to another part of Indonesia, negating his restriction claim, and (5) the BIA erred in affirming the IJ's denial of protection under the CAT. We exercise jurisdiction pursuant to 8 U.S.C. § 1252(a)(1) and DENY this petition for review.

## I. Background

Sidabutar entered the United States on July 27, 1997, with a non-immigrant visa permitting him to stay in the country for six months. Ringo arrived in the United States as a non-immigrant visitor with a six-month visa on July 16, 1999. The two were married on September 30, 1999, in the United States and have three boys born as American citizens. Sidabutar submitted an application for asylum on April 15, 2003, which the Department of Homeland Security (DHS) declined.

On June 2, 2003, DHS commenced removal proceeding against Sidabutar under 8 U.S.C. § 1227(a)(1)(B), charging him with remaining in the United States beyond his permitted time. During proceedings before the IJ, Sidabutar conceded his removability but testified in support of his applications for asylum, restriction on removal, and protection under the CAT. As a Christian in predominantly-Muslim Indonesia, he claimed past beatings and robberies at the hands of Muslims and expressed fear of returning to the country based on his religion and connections to the United States.

On March 11, 2005, an IJ denied Sidabutar's application but granted him voluntary departure with an alternative order of removal to Indonesia. On appeal

to the BIA, Sidabutar and Ringo challenged only the IJ's determinations regarding the denial of asylum. They argued that the IJ erred in concluding they were ineligible for asylum based on their failure to comply with the application's one-year filing deadline under 8 U.S.C. § 1158(a)(2)(B). On August 2, 2006, the BIA adopted and affirmed the IJ's denial of Sidabutar's asylum application. The BIA also concluded that the IJ properly denied Sidabutar's restriction on removal and CAT applications. Sidabutar and Ringo filed a timely petition for review.

## II. Jurisdiction

This Court may only retain jurisdiction over claims challenging a final order of removal "if the alien has exhausted all administrative remedies available . . . as of right." 8 U.S.C. § 1252(d)(1). "We have recognized that neglecting to take an appeal to the BIA constitutes a failure to exhaust administrative remedies as to any issue that could have been raised, negating the jurisdiction necessary for subsequent judicial review." *Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1017 (10th Cir. 2007) (internal quotation omitted). Accordingly, we generally assert jurisdiction only over those arguments that a petitioner properly presents to the BIA.

In this case, the government argues that petitioners failed to exhaust their administrative remedies because they did not challenge the IJ's denial of their restriction on removal and CAT application—the basis of this petition for review—before the BIA. The government contends that we therefore do not have

-4-

jurisdiction to consider this petition. In their notice of appeal and brief before the BIA, Sidabutar and Ringo assert multiple claims against the IJ's determination that they were ineligible for political asylum based on their failure to meet the one-year filing deadline under 8 U.S.C. § 1158(a)(2)(B). *See* Admin. R. at 72–89, 132–35.[2] Neither their notice of appeal nor their brief, however, indicated a challenge to the IJ's decision to deny them restriction on removal or protection under the CAT.

Ordinarily, we would hold the petitioners' failure to present these two issues to the BIA was a failure to exhaust administrative remedies, *Torres de la Cruz*, *supra*, precluding our review. Nevertheless, in this case, the BIA *sua sponte* addressed and ruled on both the restriction on removal and CAT claim. In its August 2, 2006 decision, the BIA "adopt[ed] and affirm[ed]" the IJ's entire March 11, 2005 decision. Admin R. at 2. After agreeing with the IJ's conclusion that Sidabutar was not eligible for asylum, the BIA "concurred" with the IJ that (1) Sidabutar failed to show "past persecution" or a clear probability that his life or freedom would be threatened if returned to Indonesia, negating his claim for restriction on removal; and (2) Sidabutar did not establish that he was more likely than not to be tortured by, or with the acquiescence of, the Indonesian

---

[2] Petitioners argued to the BIA they were entitled to the "changed circumstances" exception to the filing deadline under § 208(a)(2)(D), but the BIA disagreed. This issue was not raised on appeal. *See* 8 U.S.C. § 1158(a)(3) (no court shall have jurisdiction to review the attorney general's determination of changed circumstances).

government, to gain the protection of the CAT. *Id.* at 2–4. The BIA then summarized the IJ's factual findings and conclusions and, in some instances, provided its own independent grounds for some of the claims.

Despite the BIA's consideration of the issues the petitioners raise before this Court, the government still argues that we lack jurisdiction based on the failure to exhaust. It relies on an Eleventh Circuit case holding that the BIA's *sua sponte* consideration of an issue does not preserve it for appellate review in the courts of appeals. *See Amaya-Artunduaga v. United States AG*, 463 F.3d 1247, 1249–1251 (11th Cir. 2006) (per curiam). In *Amaya-Artunduaga*, the court held that the "goals of exhaustion are better served by our declining to review claims a petitioner, without excuse or exception, failed to present before the BIA, even if the BIA addressed the underlying issue *sua sponte*." *Id.* at 1251. According to the court, the purpose of the exhaustion requirement is threefold: (1) to avoid premature interference with administrative processes, (2) to allow the agency the full opportunity to consider petitioner's claims, and (3) to allow the BIA to compile an adequate record for judicial review. *Id.* The court found that claiming jurisdiction where the BIA only *sua sponte* considered an issue frustrates those purposes because it could not say "the BIA fully considered the petitioner's claims, as it had no occasion to address the relevant arguments with respect to the issue it reviewed, nor can [the court] say there is any record, let alone an adequate record, of how the administrative agency handled the claim in light of the

arguments presented." *Id.; see also Socop-Gonzalez v. INS,* 272 F.3d 1176, 1199 (9th Cir. 2001) (O'Scannlain, J., dissenting) (opining that circuit courts have no jurisdiction over claim petitioner did not actually raise before the BIA despite the BIA's *sua sponte* review).[3] We respectfully disagree with these cases.

*First*, while § 1252(d)(1) requires that an alien exhaust "all administrative remedies," the BIA has the authority to determine its agency's administrative procedures. If the BIA deems an issue sufficiently presented to consider it on the merits, such action by the BIA exhausts the issue as far as the agency is concerned and that is all § 1252(d)(1) requires to confer our jurisdiction. Where the BIA determines an issue administratively-ripe to warrant its appellate review, we will not second-guess that determination. Indeed, it is a touchstone of administrative law that "the formulation of procedures [is] basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 524 (1978). Administrative agencies "should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 143

---

[3] *Cf. Singh-Bhathal v. INS*, 170 F.3d 943, 947 (9th Cir. 1999) (holding that an issue only addressed in a BIA dissenting opinion does not preserve the issue on appeal).

(1940). *Cf. Weinberger v. Salfi*, 422 U.S. 749, 767 (1975) (holding that an agency may waive internal exhaustion requirements).

In this case, the BIA determined under its own rules that it had enough information on the record to issue a "discernible substantive discussion," *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006), on the two un-briefed issues. Under 8 C.F.R. § 1003.3(b) ("specificity requirement"), an alien taking an appeal of an IJ decision "must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged." Nothing in the agency's regulations preclude the BIA from waiving this requirement. Indeed, the BIA has *discretionary* authority to dismiss (and conversely, accept) appeals lacking in specificity. *See* 8 C.F.R. § 1003.1(d)(2)(i) ("A single Board member or panel *may* summarily dismiss any appeal or portion of any appeal in any case in which . . . [t]he party concerned fails to specify the reasons for the appeal . . . .") (emphasis added). Thus, the BIA's waiver of the specificity requirement in this case does not detract from the decision constituting the BIA's final order on the issues, 8 C.F.R. § 1003.1(d)(7) and we retain jurisdiction over that final order, 8 U.S.C. § 1252(a)(1). *Cf. Quarty v. United States*, 170 F.3d 961, 973 (9th Cir. 1999) (holding that an agency may waive compliance with a specificity requirement in a tax refund case where the agency "see[s] fit to dispense with [its] formal requirements and to examine the merits of the claim"). Accordingly,

under its own rules, the BIA considered the issues sufficiently presented to reach the merits of the issues and that is all exhaustion requires.

The failure to consider the BIA-issued decisions on the two claims "would come at the cost of respect for the agency's own judgment regarding its ground for decision." *Sarr v. Gonzales*, 474 F.3d 783, 791 (10th Cir. 2007). As Article III courts, our role is not to substitute our own preference for the optimal administrative procedures for the agency's determination of its internal rules. Congress entrusted to the agencies, not the courts, the authority to promulgate the rules to carry out their duties under their enabling statutes. Ignoring the BIA's determination of these issues would amount to a judicial determination that the Board acted *ultra vires* in following its own rules.

*Second*, this determination is consistent with our holding in *Dulane v. INS*, 46 F.3d 988, 996 (10th Cir. 1995).[4] In that case, we delimited the exhaustion rule to "arguments which had not been raised before *nor ruled upon by the BIA*." *Id.* (emphasis added). Accordingly, of paramount concern for the exhaustion requirement is that (1) the petitioner raise the issue, *or* (2) the BIA actually decide the issue. We held that "[a]ll determinations made during and incident to

---

[4] Both the government and petitioners mistakenly contend that *Dulane* governs this case. In *Dulane*, the petitioner raised the contested issues in a direct appeal to the BIA. 46 F.3d at 993. The petitioner then filed an additional motion to reopen without the contested issues before the BIA decided the appeal. *Id.* The BIA consolidated the appeal with the motion to reopen and addressed all of the issues at once. Accordingly, the BIA did not simply *sua sponte* consider the issues and, therefore, *Dulane* does not govern this case.

the administrative proceeding conducted by a special inquiry officer, and reviewable together by the Board of Immigration Appeals . . . are likewise included within the ambit of the exclusive jurisdiction of the Courts of Appeals . . . ." *Id.* (citing *Foti v. INS*, 375 U.S. 217, 229 (1963)). While our prior examinations of the exhaustion rule often emphasize the petitioner's burden in raising an issue before the BIA, *see, e.g., Torres de la Cruz*, *supra*, our holding today applies only to the latter situation—where the BIA considers and rules on the issue, even when the issue was not presented by the petitioner.

*Third*, we disagree with the Eleventh Circuit that this view is inconsistent with the purpose of the exhaustion rule. As identified by other circuits, § 1252(d)(1)'s exhaustion requirement permits the BIA "the opportunity to apply its specialized knowledge and experience to the matter," *Padilla v. Gonzales*, 470 F.3d 1209, 1213 (7th Cir. 2006), and "to resolve a controversy or correct its own errors before judicial intervention," *Bonhometre v. Gonzales*, 414 F.3d 442, 447 (3d Cir. 2005) (quoting *Zara v. Ashcroft*, 383 F.3d 927, 931 (9th Cir. 2004)). Where the BIA has issued a decision considering the merits of an issue, even *sua sponte*, these interests have been fulfilled. We have already benefitted from the BIA's application of its "specialized knowledge and experience," *Padilla*, 470

F.3d at 1213, and from its attempt "to resolve the controversy," *Bonhometre*, 414 F.3d at 447.[5]

At least one other circuit agrees with our analysis. In *Socop-Gonzalez*, 272 F.3d at 1186, the Ninth Circuit asserted jurisdiction over a claim not expressly raised before the BIA based on the BIA's consideration of the issue. The court held "whether or not the decision on the merits was technically before the BIA, the BIA addressed it thoroughly enough to convince us that the relevant policy concerns underlying the exhaustion requirement—that an administrative agency should have a full opportunity to resolve a controversy or correct its own errors before judicial intervention—have been satisfied here." *Id.*

---

[5] Although we do not find that DHS has waived the exhaustion requirement in this case (rather it waived the requirement that an issue be "specifically" raised in the notice of appeal), we find the authority supporting the waiver doctrine persuasive in this context.

> The power of an agency to waive exhaustion of any administrative remedy except a remedy that Congress has made jurisdictional seems well established. It also makes a great deal of sense. The agency is well-positioned to determine whether a petitioner's pursuit of further remedies potentially available at the agency is likely to cause the agency to change its position on the issue, or allow the agency to provide a factual context or an insight based on expertise that will aid the court in resolving the merits issue.
>
> If an agency waives exhaustion for any combination of . . . reasons, a court should acquiesce in the agency's waiver and should decline to apply the exhaustion requirement.

Richard J. Pierce, Jr., II Administrative Law Treatise § 15.6, 1011–12 (4th ed. 2002).

*Finally*, we disagree with the Eleventh Circuit that the BIA's *sua sponte* consideration of an issue requires a *per se* finding that it lacked consideration of "the niceties and contours of the relevant arguments" and thereby failed "to fully consider[] the petitioner's claims and compil[e] a record which is adequate for judicial review." *Amaya-Artunduaga,* 463 F.3d at 1250 (internal quotations and alterations omitted). At the end of the day, if we find the BIA's decision is unsupported by "reasonable, substantial and probative evidence" in the record, *see Uanreroro*, 443 F.3d at 1204 (citing the standard of review of BIA decisions), we can address that question on the merits. A substantive final decision by the BIA on the issues, even one poorly considered, is all that is needed to confer our jurisdiction.

In sum, because the BIA sufficiently considered Sidabutar's two unraised claims in its final order and that final order was properly appealed in this petition for review, we assert jurisdiction over the matters directly ruled on by the BIA. Of course, this rule should be construed narrowly to circumstances where the BIA issues a full explanatory opinion or a discernible substantive discussion on the merits over matters not presented by the alien. We will not entertain jurisdiction over matters where the BIA summarily affirms the IJ decision *in toto* without further analysis of the issue. *See* 8 C.F.R. § 1003.1(e)(4).

Under this rubric, we are deprived of jurisdiction over two of petitioners' claims—Sidabutar's procedural challenge to the BIA's allegedly de novo finding

that he failed to establish (1) "past persecution," and (2) the unreasonableness of relocation to another part of Indonesia where the IJ made no such finding in the first instance. Since these are challenges raised for the first time in this Court, the BIA had no opportunity to consider their merits. Accordingly, the petitioners' failed to exhaust administrative remedies on these claims. These two claims should have been brought before the BIA in the first instance through a motion to reconsider or reopen. *See* 8 C.F.R. § 1003.2.[6]

We now turn to the remaining claims that the BIA directly decided.

### III.  Remaining Claims

### A.     Standard of Review

When reviewing a BIA decision, we search the record for "substantial evidence" supporting the agency's decision. *Uanreroro*, 443 F.3d at 1204. "[O]ur duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Id.* (quoting *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004)). Agency findings of fact are "conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Sarr,*

---

[6] The petitioners base these claims on the BIA's inability to conduct de novo factfinding. *See* 8 C.F.R. § 1003.1(d)(3)(1). Although we have no jurisdiction to reach the merits of these claims, we draw the petitioners' attention to the preamble of the 2002 regulations enacting § 1003.1. *See* 67 Fed. Reg. 54878, 54890 (Aug. 26, 2002). It suggests that the BIA is not limited to the IJ's determinations of "past persecution" and the like. *Id.* It advises that the BIA may reach these decisions de novo under its plenary review of legal decisions. *Id.*

474 F.3d at 788–89.  We do not "weigh the evidence or . . . evaluate the witnesses' credibility."  *Id.* at 789.

### B.    Scope of Review

In a pair of cases, we recently re-examined the scope of our review of BIA decisions.  *See Sarr*, 474 F.3d at 783; *Uanreroro*, 443 F.3d at 1197.  We explained that the BIA now has three options in adjudicating an alien's claims: (1) a decision by a three-member panel with a full explanatory opinion, 8 C.F.R. § 1003.1(e)(6); (2) a summary affirmance by a single member of the Board without opinion, *id.* § 1003.1(e)(4); or (3) a decision via a brief order by a single member of the Board, affirming, modifying, or remanding the IJ's decision, *id.* § 1003.1(e)(5).  *Sarr*, 474 F.3d at 789; *Uanreroro*, 443 F.3d at 1203–04.

Our scope of review directly correlates to the form of the BIA decision. *Sarr*, 474 F.3d at 789.  First, if a three-member panel issues a full opinion under (e)(6), the "BIA opinion completely supercedes the IJ [opinion] for purposes of [judicial] review."  *Uanreroro*, 443 F.3d at 1203.  Second, if a single member of the BIA issues a summary affirmance without opinion under (e)(4), the IJ opinion constitutes the decision of the agency for purposes of appeal and the reviewing court looks to that opinion to determine the agency's rationale.  *Id.* at 1203.[7]

---

[7]  Under 8 C.F.R. § 1003.1(e)(4)(ii), the Board member's order must include the following language for a summary affirmance:  "The Board affirms, without opinion, the result of the decision below.  The decision below is, therefore, the final agency determination.  See 8 C.F.R. 1003.1(e)(4)."

-14-

Finally, if a single BIA member issues "a brief order, affirming, modifying, or remanding" the IJ's order under (e)(5), such an order constitutes "the final order of removal under 8 U.S.C. § 1252(a)," and thus this Court "will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Id.* at 1203–04.

The petitioners' appeal was not reviewed by a panel, nor did the BIA decision include the mandatory language necessary for a summary affirmance; accordingly, the BIA's order in this case represents the (e)(5) middle-ground situation—one "more significant than an (e)(4) case and less significant than an (e)(6) case," *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1190 (10th Cir. 2005). In the instant case, the Board concurred in the IJ's decision and summarized the arguments in support of that judgment. Yet, the BIA also relied on some factors not explicitly cited by the IJ. Under these circumstances, according to *Uanreroro,* "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." 443 F.3d at 1204. But where the BIA decision "contains a discernible substantive discussion" that stands on its own and does not "explicitly incorporate[] or reference[]" the IJ's reasoning, "our review extends no further . . . ." *Id.* In sum, "we may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr*, 474 F.3d at 790.

C.    **Application**

1.    **Restriction on Removal**

Under 8 U.S.C. § 1231(b)(3)(A), an alien is entitled to restriction on removal if "the alien's life or freedom would be threatened in th[e] country [of removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *See also Tulengkey v. Gonzales,* 425 F.3d 1277, 1280 (10th Cir. 2005). An alien may create a rebuttable presumption of eligibility for restriction on removal by either (1) demonstrating "past persecution" in the proposed country of removal on account of one of the protected grounds, 8 C.F.R. § 1208.16(b)(1); *see also Niang v. Gonzales*, 422 F.3d 1187, 1195 (10th Cir. 2005); or (2) showing that "it is more likely than not that the alien would be subject to persecution on one of the specified grounds" upon returning to the proposed country of removal, 8 C.F.R. § 1208.16(b)(2); *see also Tulengkey,* 425 F.3d at 1280.

a.    **Past Persecution**

First, the petitioners assert that Sidabutar has properly established past persecution, entitling Sidabutar to the presumption of restriction on removal. Considering the BIA's determination that Sidabutar failed to show past persecution, we disagree with the petitioners.

The BIA decision explained,

-16-

> [Sidabutar] testified that he was beaten repeatedly by Muslim classmates in high school and in University on account of his Christian religion. In two of these incidents, he said he was seriously injured, although he submitted no medical records to document the severity of the injuries. Outside of school, he was repeatedly confronted by people who demanded money from him. In one instance, when he did not have money to give, he was struck and his motorcycle was burnt. He believed that these people were Muslims who were targeting him because they knew he was Christian.

Admin. R. at 3.

Based on these findings, the BIA's conclusion that he did not suffer past persecution is consistent with our case law. "Although persecution is not defined in the INA, we have held that a finding of persecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004) (internal quotation omitted). *Compare Tulengkey*, 425 F.3d at 1281 (finding no past persecution where alien was robbed, fondled, and suffered a minor head injury); *Kapcia v. INS*, 944 F.2d 702, 704–05, 708 (10th Cir. 1991) (holding no past persecution where alien had twice been detained for two-day periods during which he was beaten and interrogated, whose parents' home had been searched, whose work locker had been repeatedly broken into, and who had been assigned poor work tasks, denied bonuses, and conscripted into the army, where he was constantly harassed); *and Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005) ("[T]wo isolated criminal acts, perpetrated by unknown assailants, which resulted

-17-

only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution."); *with Nazaraghaie v. INS*, 102 F.3d 460, 463–64 (10th Cir. 1996) (suggesting that asylum applicant's severe beating and ten month imprisonment on account of his political opinion constituted persecution). Here, we have no allegations of imprisonment or severe beatings. Instead, at most, Sidabutar suffered repeated robberies and some minor injuries. We agree with the BIA that this does not rise to past persecution.

Furthermore, past persecution must be inflicted by the government or by a non-governmental group that "the government is unwilling or unable to control." *Batalova v. Ashcroft*, 355 F.3d 1246, 1253 (10th Cir. 2004). On this point, the BIA noted that Sidabutar was not "threatened, harmed, or detained by the government . . . . [,] that the government has, in recent years, taken steps to stop and punish sectarian violence. Consequently, it does not appear that the government is now unwilling or unable to control those who have in the past targeted Christians for harm." Admin. R. at 3. Accordingly, the BIA determined that Sidabutar failed to establish past persecution and that, in any event, changed circumstances in Indonesia foreclosed any past mistreatment as a basis for restriction on removal. *See* 8 C.F.R. § 1208.16(b)(1)(A). We are convinced that a reasonable factfinder would not be compelled to find past persecution here.

### b. Probability of Future Persecution

Even if Sidabutar has not established past persecution, the petitioners next claim he is entitled to a restriction on removal based on the clear probability of future persecution in Indonesia. He argues that his testimony regarding his fear of returning to Indonesia based on his past problems and the current country conditions affecting Christians creates a presumption of future fear. Relying mainly on State Department reports, the BIA rejected the argument. We agree.

The BIA held,

> According to the 2004 International Religious Freedom Report, published by the Department of State, Indonesia is not an Islamic state, and the constitution recognizes the right of Indonesians to worship according to their own religion. Both Catholicism and Protestantism are officially recognized religions. Christians constitute about 10 percent of the population and predominate in eastern parts of Indonesia. Islamic Shari'a law is not imposed on Christians, and, in practice, most Indonesians enjoy a high degree of religious freedom.

Admin. R. at 3.

In addition, the IJ found that any "mistreatment [to Sidabutar in Indonesia] would not rise above the level of harassment or ambiguous threats." *Id*. at 155.

The IJ held,

> The Court does not believe the respondent would be individually targeted as a Christian or based on his children's birth in the United States. Thus, although it is possible that the respondent would suffer some harm upon return to Indonesia, I don't think that it's more likely than not that this harm would be visited upon him.

*Id*.

-19-

Petitioners argue that the BIA's reliance on the State Department reports is inappropriate. The petitioners also point to other documentation to rebut the State Department reports, as well as information in the State Department reports themselves which would corroborate Sidabutar's claim.

"It is not our prerogative to reweigh the evidence, but only to decide if substantial evidence supports the [agency's] decision." *Hang Kannha Yuk v. Ashcroft,* 355 F.3d 1222, 1236 (10th Cir. 2004). We only determine whether a reasonable factfinder could find that Sidabutar did not have a reasonable fear of future persecution. Indeed, we only reverse that finding if a "reasonable adjudicator would be compelled to conclude to the contrary." *Sarr*, 474 F.3d at 788–89. While there may be some conflicting data in the reports, the BIA and IJ did not err in their overall assessment of country conditions. Based on the findings of the BIA and the IJ, we hold that the decision is supported by substantial evidence in the record.

### 2. Convention Against Torture

To receive the protections of the CAT, an alien must demonstrate that it "is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Cruz-Funez*, 406 F.3d at 1192; *see also* 8 C.F.R. § 1208.16(c)(2). "A claim under the CAT differs from a claim for asylum or withholding of removal under the INA because there is no

requirement that the petitioners show that torture will occur on account of a statutorily protected ground." *Cruz-Funez*, 406 F.3d at 1192.

Since we affirmed the BIA's finding that it is unlikely that Sidabutar would face future persecution at the hands of the government or a non-governmental group that "the government is unwilling or unable to control," it is likewise against the odds that he would be tortured by the government or a proxy for the government. Accordingly, we hold the BIA's determination is supported by substantial evidence.

## IV. Conclusion

For the foregoing reasons, Sidabutar and Ringo's claims are without merit and we DENY this petition for review.