**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 15, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MONANG LUMBANGAOL and
SHELLY PASARIBU,

        Petitioners-Appellants,

v.

PETER D. KEISLER, Acting Attorney
General of the United States,[*]

        Respondent-Appellee.

No. 07-9504

(Board of Immigration Appeals)

(Agency File Nos. A97-194-418/419)

---

**ORDER AND JUDGMENT**[**]

---

Before **McCONNELL**, **BRISCOE**, and **McKAY**, Circuit Judges.

---

Petitioners Monang Lumbangaol and Shelly Pasaribu, husband and wife,

challenge a January 10, 2007 decision of the Board of Immigration Appeals

(BIA). The BIA denied their claims for asylum, withholding of removal, and

---

[*] Peter D. Keisler, Acting Attorney General, is automatically substituted for his predecessor in office, Alberto R. Gonzales, Attorney General. *See* Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

relief under the Convention Against Torture (CAT). Petitioners do not challenge the determination with respect to their asylum claim, as it was time-barred. *See Ferry v. Gonzales*, 457 F.3d 1117, 1129–30 (10th Cir. 2006). They petition this Court for review only with respect to their withholding of removal and CAT claims. We have exclusive jurisdiction under the Immigration and Nationality Act to review the final order of removal, 8 U.S.C. § 1252(a), and we deny the petition.

## I. BACKGROUND

Petitioners are natives and citizens of Indonesia. They are practicing Seventh-Day Adventists from a predominantly Muslim nation. Mr. Lumbangaol came to the United States on November 12, 1995, under a visitor's visa permitting him to stay only until May 10, 1996. Ms. Pasaribu came on March 25, 2001; her visitor's visa expired on September 25, 2001. They were married in Colorado in March 2003, and jointly applied for asylum, withholding of removal, and relief under the CAT on April 14, 2003. On February 10, 2005, an immigration judge (IJ) at Denver denied their application and ordered them removed to Indonesia. The BIA affirmed in a written per curiam opinion on January 10, 2007.

According to Mr. Lumbangaol's testimony before the IJ, he was born in a mostly Christian part of North Sumatra in 1968, but moved to the capital, Jakarta, a heavily Muslim city, in 1982. There, he had to switch from the public schools to a private school to avoid Muslim indoctrination. It was difficult to find a

church in Jakarta at which to worship, so he helped his parents build one. Mr. Lumbangaol testified that services at his church were often interrupted by Muslims outside blaring loud music to cause disruption. When he began attending churches elsewhere in Jakarta, however, he experienced no problems. During the time he was still in the country, no violence or harassment was directed toward Mr. Lumbangaol personally, although he once observed a Christian friend get into a fight with Muslims and he testified that Muslims "would really look at us [Christians] as if we are unclean." After he left Indonesia, he heard that Muslims had broken his family's church's windows and destroyed its fence.

Ms. Pasaribu testified that her church in Jakarta was often the target of stone-throwing and disruption by Muslims, and that on one occasion the church was attacked by a mob which had to be fended off by the police. She saw riots in the city and witnessed Chinese people being beaten and raped. She was frequently groped and sexually harassed on the bus, and although she could not say that it was Muslims who were doing so or that she was targeted on account of her religion, nonetheless she was constantly afraid of Muslims.

## II. DISCUSSION

A. Standards and Scope of Review

To obtain withholding of removal (also called restriction on removal), which forestalls an alien's deportation to a particular country, the petitioner must

show that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). There must be a "clear probability of persecution," which requires objectively that persecution on the basis of a protected status be "more likely than not." *Elzour v. Ashcroft*, 378 F.3d 1143, 1149 (10th Cir. 2004). Persecution in this context "is an 'extreme' concept that 'does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional.'" *Chen v. Ashcroft*, 381 F.3d 221, 231 (3d Cir. 2004) (Alito, J.) (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 & n.10 (3d Cir. 1993)). It is a more demanding standard than that applicable to requests for asylum.

To obtain relief under the Convention Against Torture, an alien must prove that it is more likely than not that he will be tortured upon return to his country. 8 C.F.R. §§ 208.16(c)(2), (4). Persecution "so severe as to rise to the level of torture" may also be grounds for relief under the CAT, and the torture need not be on account of a protected status. *Elzour*, 378 F.3d at 1150. "Torture," however, must be "an extreme form of cruel and inhuman treatment," 8 C.F.R. § 1208.18(a)(2), and to warrant relief under the CAT it must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," *id.* § 1208.18(a)(1).

We review questions of law *de novo*. *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005). Here, however, the issues are of fact, and we review the BIA's factual determinations to see if they are supported by "substantial evidence." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). Facts found during the administrative process are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), and "our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Elzour*, 378 F.3d at 1150.

## B. Withholding of Removal Claim

The BIA properly concluded that Petitioners have not shown the clear probability of persecution required to sustain a claim for withholding of removal. There is little doubt that Mr. Lumbangaol and Ms. Pasaribu find it easier to practice their religion in the United States than in their native Indonesia, and that they may expect to undergo difficulties upon return. But Petitioners have not shown that these difficulties rise to the severity necessary to warrant the relief they seek.

Mr. Lumbangaol and Ms. Pasaribu each have relatives who are practicing Christians and continue to live in Indonesia, a fact which "diminishes [their] claim to a fear of future persecution." R. 3 (citing *In re A–M–*, 23 I. & N. Dec. 737, 740–41 (BIA 2005)). More importantly, the BIA and the IJ determined that

the treatment Petitioners received while in Indonesia did not rise to the level of persecution at all, and we agree. A general atmosphere of intolerance, with no incidents directed specifically at either Petitioner nor any hardship that could be said to rise above the level of mere harassment, is not persecution within the meaning of the law. Petitioners have presented no evidence that conditions in Indonesia are worse today than when Petitioners came to this country, so there is no reason to think that they would be persecuted upon return to Indonesia any more than before they left. Mr. Lumbangaol even testified that when he stopped attending the church he built with his parents, which was near five mosques, and started frequenting Seventh-Day Adventist churches elsewhere in Jakarta, he "didn't experience any problems." R. 114.

In comparison, we have recently held that an Indonesian Christian who alleged "past beatings and robberies at the hands of Muslims" had failed to establish past persecution, let alone a likelihood of future persecution. *Sidabutar v. Gonzales*, ___ F.3d ___, No. 06-9576, slip op. at 3, 18, 20 (10th Cir. Sept. 21, 2007). Based on the comparatively weaker record in this case, the BIA's determination that Petitioners failed to meet their burden of showing that persecution upon return was "more likely than not" is well supported by substantial evidence. *Elzour*, 378 F.3d at 1149.

C. Convention Against Torture Claim

The BIA also properly rejected Petitioners' argument that it is more likely than not that they would face torture on return to Indonesia. Simply put, they have made out no elements of torture at all. Mr. Lumbangaol admitted that nothing happened to him personally in Indonesia, and although Ms. Pasaribu stated that she had been sexually harassed on public buses, this is not torture. Neither has provided any reason to think that they will suffer worse treatment upon return to Indonesia than while there before—let alone the "extreme form of cruel and inhuman treatment" that is torture. 8 C.F.R. § 1208.18(a)(2).

Furthermore, the cursory treatment given by Petitioners in their brief to their CAT claim suggests no reason for thinking that they would be tortured by, or with the consent or acquiescence of, any public official, as required under the CAT. *Id.* § 1208.18(a)(1). To the contrary: as the BIA noted, Ms. Pasaribu testified that the police in Jakarta actually intervened to protect a group of Seventh-Day Adventists, including herself, from an apparent mob attack by the local Muslims. As we observed in *Sidabutar*, where there is little likelihood that an alien "would face future persecution at the hands of the government or a non-governmental group that 'the government is unwilling or unable to control,' it is likewise against the odds that he would be tortured by the government or a proxy for the government." *Sidabutar*, *supra*, slip op. at 21 (quoting *Batalova v. Ashcroft*, 355 F.3d 1246, 1253 (10th Cir. 2004)).

### III. CONCLUSION

The BIA did not err in dismissing Petitioners' claims for withholding of removal and relief under the CAT, and accordingly the instant petition for review is **DENIED**.

Entered for the Court,

Michael W. McConnell
Circuit Judge