**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 17, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DESEM KABING, also known as
Desem Kabing Jefri,

Petitioner,

v.

MICHAEL B. MUKASEY,
Attorney General,*

Respondent.

No. 07-9522
(Petition for Review)

ORDER AND JUDGMENT**

Before **TACHA**, **EBEL**, and **MURPHY**, Circuit Judges.

Desem Kabing, a native and citizen of Indonesia who is a Christian and a

member of the Dayak ethnic group, appeals the decision of the Bureau of

---

\*       On November 9, 2007, Michael B. Mukasey became the United States
Attorney General.  In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Mukasey is substituted for Alberto R. Gonzales as the
respondent in this action.

\*\*       After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Immigration Appeals (BIA) to deny his requests for restriction on removal and relief under the Convention Against Torture (CAT). We affirm.

I.

Mr. Kabing entered the United States in 1994 on a non-immigrant visa permitting him to stay in the country for six months. In 2004, the Department of Homeland Security commenced removal proceedings under 8 U.S.C. § 1227(a)(1)(B), charging him with remaining in the United States beyond his permitted time. Mr. Kabing conceded removability and applied for asylum, restriction on removal, and CAT relief.

At a hearing before an Immigration Judge (IJ), Mr. Kabing admitted that he had not experienced ethnic or religious persecution in Indonesia. He testified, however, that as a Christian he had difficulty finding good employment. Moreover, conditions for Christians in Indonesia are "bad and they're very afraid." Admin. R. at 74. He feared that, if required to return to Indonesia, Muslims would attack him or his family. Also, ethnic conflicts in Mr. Kabing's native region of Kalimantan had escalated during his time in the United States. Tensions between Dayaks and Madurese, a Muslim transmigrant group, had erupted in violence.

The IJ denied the asylum request because he found that Mr. Kabing had not filed within the statutory one-year period after arriving in this country and had not justified the nine-year delay with a showing of extraordinary or changed

circumstances. Reviewing the evidence in light of the requests for restriction on removal and CAT relief, the IJ observed that Mr. Kabing had not shown past persecution and concluded it was unlikely that Mr. Kabing would be subject to future religious or ethnic persecution in Kalimantan, where a significant Christian population resides, or in Jakarta, where he had lived for a brief time before coming to the United States. He also decided that Mr. Kabing had not demonstrated the probability of torture by, or with the acquiescence of, the Indonesian government. The IJ therefore denied the remainder of Mr. Kabing's requests.

Mr. Kabing appealed the IJ's decision to the BIA, which affirmed in a short order. Though Mr. Kabing does not contest the asylum ruling, he now petitions this court for review of the BIA's denial of his requests for restriction on removal and CAT relief.

## II.

The BIA's decision is reviewed as the final order of removal, but where the BIA relies on the IJ's rationale to reach its decision, we may consult the IJ's opinion to the extent relied upon by the BIA. *See Sarr v. Gonzales*, 474 F.3d 783, 790-91 (10th Cir. 2007). We review the BIA's decision "look[ing] to the record for substantial evidence supporting the agency's decision." *Id.* at 788 (internal quotation marks omitted). Under the substantial evidence test, "[o]ur duty is to guarantee that factual determinations are supported by reasonable, substantial and

-3-

probative evidence considering the record as a whole." *Id.* (internal quotation marks omitted). "Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 788-89 (internal quotation marks omitted).

"To qualify for restriction on removal, an alien must show a 'clear probability' of persecution in the proposed country of removal," *Yan v. Gonzales*, 438 F.3d 1249, 1251 (10th Cir. 2006) (quoting *Niang v. Gonzales*, 422 F.3d 1187, 1195 (10th Cir. 2005)), on grounds of "race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42). Mr. Kabing claims that the denial of restriction on removal was a direct result of the IJ's improper evaluation of the evidence. According to Mr. Kabing, the IJ made two erroneous findings: (1) that the Dayak people were actually the persecutors in Kalimantan and (2) that Mr. Kabing did not face a general threat of ethnic or religious persecution in Indonesia.

After reviewing the record, we cannot agree with Mr. Kabing's contention. The background materials indicate that it was the Dayak tribe that instigated the strife with the Madurese, in an attempt to regain economic control of Kalimantan lands. *See* Admin. R. at 113 (noting that Dayak/Madurese violence occurred in 2001, prompting 130,000 Madurese to leave Kalimantan). Further, the record does not affirmatively establish a probability of future religious persecution. The State Department reports state that Indonesian government policy provides for

"all persons the right to worship according to his or her own religious belief,"

although the government "occasionally" tolerates discrimination by private actors.

*Id.* at 128. "In most parts of Indonesia, people generally are able to worship as

they wish with no interference from the state or their neighbors of other faiths."

*Id.* at 127. *See also id.* at 128 (stating that "[s]ignificant Christian populations"

live in certain parts of Kalimantan). In sum, we cannot conclude that any

reasonable factfinder would be compelled to reject agency findings underlying its

denial of Mr. Kabing's request for restriction on removal.

"The [CAT] prohibits the return of an alien to a country where 'it is more

likely than not that he or she would be tortured.'" *Yan*, 438 F.3d at 1251 (quoting

8 C.F.R. § 1208.16(c)(2)). "Torture" must be "an extreme form of cruel and

inhuman treatment and does not include lesser forms of cruel, inhuman or

degrading treatment or punishment that do not amount to torture." 8 C.F.R.

§ 1208.18(a)(2). To warrant relief under the CAT it must be "inflicted by or at

the instigation of or with the consent or acquiescence of a public official or other

person acting in an official capacity," *id*. § 1208.18(a)(1).

The record provides no basis for Mr. Kabing's assertion that he will be

tortured upon his return to Indonesia. As this court has observed, where there is

little likelihood that an alien "would face future persecution at the hands of the

government or a non-governmental group that the government is unwilling or

unable to control, it is likewise against the odds that he would be tortured by the

government or a proxy for the government." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1126 (10th Cir. 2007) (internal quotation marks omitted). The determination on the CAT claim is supported by substantial evidence.

The petition for review is DENIED.

Entered for the Court


Deanell Reece Tacha
Circuit Judge