**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 23, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ADENAN JULIANTO,

      Petitioner,

v.

MICHAEL B. MUKASEY,
United States Attorney General,

      Respondent.

No. 07-9566
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **McCONNELL**, **ANDERSON**, and **BRORBY**, Circuit Judges.

---

    Adenan Julianto, a native and citizen of Indonesia, petitions for review of a

Board of Immigration Appeals (BIA) decision denying his applications for

asylum, restriction on removal, and protection under the Convention Against

Torture (CAT). Mr. Julianto claims the BIA denied his requests for restriction on

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

removal and CAT relief because it discredited his testimony. We perceive no error and deny the petition for review.

## I

Mr. Julianto entered the United States on June 1, 2000, on a J-1 visitor visa authorizing him to stay until November 18, 2001. He overstayed his visit, and on April 8, 2003, the government commenced removal proceedings, charging him under 8 U.S.C. § 1227(a)(1)(B) with remaining in this country beyond his authorized time. Mr. Julianto conceded the charges but requested asylum, restriction on removal, and CAT relief. Finding that he failed to timely file his asylum application within one year of entering the United States, and otherwise failed to show extraordinary circumstances justifying the delay, an Immigration Judge (IJ) denied his asylum application. The IJ then considered his requests for restriction on removal and CAT protection but found that he did not satisfy the standards of relief. Accordingly, the IJ denied his applications and ordered Mr. Julianto removed to Indonesia. The BIA affirmed, and this petition followed.

## II

On review, Mr. Julianto does not challenge the agency's denial of his asylum application, and we do not consider it. Instead, he asserts that the BIA discounted his credibility to deny restriction on removal and CAT protection. We review the agency's legal determinations de novo and its "findings of fact under the substantial evidence standard." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150

(10th Cir. 2004). Where, as here, a single member of the BIA issues a brief order affirming the IJ's decision, we "will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) (quotation omitted). This permits us to "consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007).

We begin with Mr. Julianto's application for restriction on removal. An alien is entitled to restriction on removal if his "life or freedom would be threatened in [the country of removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also Sidabutar*, 503 F.3d at 1123. An alien creates a rebuttable presumption of entitlement to restriction on removal by showing past persecution on account of any of these five grounds, 8 C.F.R. § 1208.16(b)(1), or by showing that it is "more likely than not" that he will suffer future persecution upon removal, *id.* § 1208.16(b)(2); *see also Sidabutar*, 503 F.3d at 1123-24.

Mr. Julianto claims he was persecuted on account of his Chinese heritage and Christian faith. He testified that as a child, he was taunted as a "colonialist" because his former last name, "De La Croix," was mistakenly believed to be a legacy of the Dutch occupation of Indonesia. Admin. R. at 91. He also recalled the 1998 Indonesian riots, during which he witnessed the beating of a Chinese man while riding the bus. Mr. Julianto reported that he injured his arm fleeing

the bus and required three stitches to close the laceration. He stated that when the riots began, he went to a hotel rooftop, where he observed fights on the street and heard on the radio that Chinese women had been raped and Chinese-owned stores were being burned. Although his application states that he spent the night at the hotel, Mr. Julianto testified that later that night, at approximately 11:00 pm, he left the hotel and went to his apartment, where he met his girlfriend because she was too frightened to return to her home. The next day, while enroute to the airport, they observed four cars burning on the streets, and once at the airport, saw many Chinese people attempting to leave the country. Additionally, Mr. Julianto testified that Bali suffered two bombings in 2002 and 2005.

These events do not warrant relief. The contention that Mr. Julianto changed his last name because children thought it was Dutch is wholly unrelated to his claims of persecution as a Sino-Christian. With regard to his experiences during the 1998 riots, they do not rise to the level of persecution. "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005) (quotation omitted). It is "an extreme concept that does not include every sort of treatment our society regards as offensive." *Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir. 1998) (quotation omitted). Although "[p]ersecution may be found by cumulative, specific instances of violence and

harassment," *id.*, "generalized lawlessness and violence between diverse populations" is generally insufficient to satisfy the standard, *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998).

There is no question that there was violence between Muslims and Chinese-Christians during the riots, but Mr. Julianto suffered little direct harm. As the IJ correctly concluded, the injury he sustained fleeing the bus is not tantamount to persecution, *cf. Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005) (finding no persecution where alien was robbed, fondled, and sustained a minor head injury), and there is no other evidence suggesting that he was ever specifically targeted on account of racial or religious animus. The violence he witnessed and heard about on the radio was generalized and not directed at him in any way, and he was already in the United States at the time the two Bali bombings occurred in 2002 and 2005. As for his claims of future persecution, Mr. Julianto fails to show a clear probability of persecution upon removal. Indeed, as the IJ noted and the BIA agreed, his Christian mother and five siblings continue to live unharmed in Indonesia, and there is no evidence to suggest that it would be unreasonable for him to relocate to another part of Indonesia, *see* 8 C.F.R. § 1208.16(b)(3). Under these circumstances, Mr. Julianto is not entitled to restriction on removal.

We thus consider his remaining avenue of relief, CAT protection. The CAT does not require an alien to show mistreatment "based on any particular

characteristic such as race or political opinion," but mandates that the alien "show that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Ismaiel v. Mukasey*, 516 F.3d 1198, 1204 (10th Cir. 2008) (quotations and citations omitted). Since Mr. Julianto failed to show a likelihood that he would be persecuted upon removal, it follows that he probably will not be tortured. *See Sidabutar*, 503 F.3d at 1125-26. We therefore affirm the BIA's denial of CAT relief as well.

Mr. Julianto's lingering contention that the BIA improperly discredited his testimony is disingenuous and without merit. In his brief to the BIA, he asserted there were bombings "in Jakarta in the late 1990's, in 2001, 2002, and 2005," Admin. R. at 9, and that "as a child student, [he] was beaten up by Muslim children," *id.* at 10. He also claimed that he observed "the burning of an entire section of businesses and raping of women during rioting, and repeated bombings . . . throughout a ten-year period." *Id.* at 13. Recognizing that this recitation of facts was inconsistent with Mr. Julianto's testimony before the IJ, the BIA ruled that his factual assertions were unsupported by the record. To substantiate its ruling, the BIA cited his specific testimony that he was taunted (rather than beaten) as a child because his former last name was thought to be Dutch, that he only heard over the radio that women had been raped, and that the Bali bombings transpired after he left Indonesia for the United States. Although we normally review the agency's adverse credibility findings to ensure that they are supported

-6-

by specific, cogent reasons, *see Sarr*, 474 F.3d at 789, here, the BIA did not

discredit Mr. Julianto's testimony; it corrected his misrepresentation of it.

The petition for review is DENIED.

Entered for the Court

Stephen H. Anderson
Circuit Judge