FILED
United States Court of Appeals
Tenth Circuit

April 28, 2015

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

BINBIN HE,

      Petitioner,

v.

LORETTA E. LYNCH,
United States Attorney General,[*]

      Respondent.

No. 14-9586
(Petition for Review)

ORDER AND JUDGMENT[**]

Before **BRISCOE**, Chief Judge, **LUCERO** and **MATHESON**, Circuit Judges.

Binbin He, a native and citizen of China, petitions for review of a final order

of the Board of Immigration Appeals (BIA) denying his application for asylum and

restriction on removal under the Immigration and Nationality Act, as well as his

---

[*] In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Loretta E. Lynch is substituted for Eric H. Holder, Jr., as the respondent
in this action.

[**] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

request for protection under the United Nations Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252(a). We deny the petition.

## I.  BACKGROUND

Petitioner entered the United States in May 2009 at age nineteen with the stated intention of attending the University of Montana. He never registered for school. Instead, in November 2009, petitioner filed an application for asylum, withholding of removal, and protection under the CAT. Petitioner stated that he feared returning to China because of an incident that occurred in June 2008. According to petitioner, police raided the "house church" to which he belonged during a bible-study meeting. The police accused the group of holding an illegal gathering, and after confiscating their religious materials, they arrested petitioner and his fellow attendees.

Petitioner testified he was detained for seven days, during which he was interrogated three times. During the first interrogation, he was slapped in the face twice and kicked in the stomach once; during the second, he was kicked in the stomach three or four times; and during the third, he was kicked in his lower back, thigh, and leg. Eventually, petitioner gave in to the demands of the police and signed a "guarantee letter" in which he promised to have no further participation in the "house church." Petitioner was released after his father paid a fine.

In January 2009, petitioner made arrangements to exit China and come to the United States. He paid a middleman to arrange a student visa to attend the University

of Montana.  According to petitioner, he did not feel safe living anywhere in China because the government had launched a nationwide crackdown on underground churches.  He acknowledged that his grandmother (who is also a Christian) attends a government-sanctioned church without interference, but he was not interested in joining a government-sponsored church.  Petitioner further admitted that his parents still worship, without interference, at the same "house church" where he was a member.

In further support of his application, petitioner submitted a letter from his father, who stated that petitioner told him he had been beaten three times during his detention.  Petitioner also submitted a letter from his grandmother, who stated that petitioner was released from custody after his father paid a fine.  Finally, petitioner submitted a letter from his "house church" pastor, who stated that although he was not present at the time of the raid, petitioner later told him he had been interrogated and beaten during his detention.

The Immigration Judge (IJ) denied petitioner's requests for relief.  The IJ found that although petitioner's testimony was credible, he failed to prove past persecution because of the lack of corroborating evidence.  The IJ further found that petitioner failed to demonstrate a reasonable likelihood of future persecution.  Because petitioner failed to meet the burden of proof required for asylum, the IJ found that he failed to satisfy the more stringent standard for restriction on removal,

and there was no evidence of the likelihood of torture upon removal to China. The

BIA affirmed the IJ's decision.[1]

## II. **STANDARD OF REVIEW**

A single member of the BIA affirmed the IJ's decision in a brief order. Under

these circumstances, "[a]lthough we review the BIA's opinion, we also may consult

the IJ's explanation." *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011).

We decide legal questions de novo and look to see if the agency's findings of

fact are supported by substantial evidence. *Id.* "Under this standard of review,

agency findings of fact are conclusive unless any reasonable adjudicator would be

compelled to conclude to the contrary." *Id.* (internal quotation marks omitted).

Whether petitioner has shown past persecution or a well-founded fear of future

persecution is a question of fact. *See id.*

## III. **ASYLUM**

To be eligible for a discretionary grant of asylum, petitioner had to show that

he "suffered past persecution or has a well-founded fear of [future] persecution on

account of race, religion, nationality, membership in a particular social group, or

political opinion." *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005)

(footnote omitted) (internal quotation marks omitted). "Even without past

---

[1] Alternatively, the IJ found that even if the claim had been corroborated, the harm suffered by petitioner did not rise to the level of persecution. The BIA did not address this finding, and instead affirmed on the ground that the claim was not corroborated.

persecution, [an applicant can] still qualify for asylum by establishing a well-founded fear of future persecution.  Such a fear must be both subjectively genuine and objectively reasonable." *Id*. at 1281 (citation omitted) (internal quotation marks omitted).

A.  *Past Persecution*

During the hearing the IJ asked petitioner for evidence to corroborate his testimony about past persecution:

> IJ:  Sir, when you were arrested, did they give you any paperwork when you were bonded out of jail?
>
> PETITIONER:  Yes.  I had to write a guarantee letter.
>
> IJ:  Yes, I know that.  But I mean, did the police give you any charges?  Did the police give you any paperwork?
>
> PETITIONER:  No.
>
> IJ:  Now, there were seven people . . . arrested with you.  You said you still keep in contact with them.  Did you get one of them or any of them to write you a letter regarding this incident?
>
> PETITIONER:  No, I did not.
>
> IJ:  Okay.  Now when you, you said that during the time you were in jail they beat you.  When you got out of jail, did you go to a hospital or to a clinic?
>
> PETITIONER:  Yes I did.  I went to just a very small clinic to check.
>
> IJ:  Do you have any paperwork from that clinic saying that you were beat or anything to that [e]ffect?
>
> PETITIONER:  No, I don't.

Admin. R. at 122-23.

The IJ asked petitioner's attorney if he had any follow up questions, and the attorney responded "No." *Id*. at 123.

Although the IJ found petitioner credible, he concluded that "his testimony regarding his detention and physical abuse is simply not detailed and specific enough to sustain his burden of proving past persecution absent corroborating evidence or an explanation of why he is not in possession of such evidence." *Id*. at 64. The IJ acknowledged the letters from petitioner's father and pastor, but noted the absence of any statements that they observed any signs of physical abuse or that petitioner was treated at a clinic. The IJ also found it significant that petitioner did not produce a copy of the letter he was forced to sign to secure his release, nor did he submit any paperwork from the police, the medical clinic, or statements from those who were arrested with him.

Petitioner admits the IJ asked him for corroborating evidence and invited his counsel to explore the matter further. But he argues the IJ also was required to ask him *why* he didn't have it. We disagree. Although an applicant's testimony "may be sufficient to sustain [his] burden [of proof] without corroboration," this is true "only if the applicant satisfies the trier of fact that [his] testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that [he] is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). In instances "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony,

- 6 -

such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain [it]." *Id*. Nothing in the statute affirmatively obligates the IJ, as the trier of fact, to request corroborating evidence, let alone inquire *why* such evidence is unavailable.

Petitioner argues he had explanations for the lack of corroborating evidence if only the IJ had asked. For example, he says "it was not the policy of the police at that particular branch to give paperwork to released prisoners." Pet. Opening Br. at 6. Also, petitioner "might have explained that the small clinic where he was treated did/does not give paperwork to patients." *Id*. at 7. As to the lack of letters from his fellow-arrestees, petitioner now says that "even though he has called them or some of them 'once in a while' . . . both his former church mates and he were afraid to correspond with one another by mail for fear that the correspondence could be found/intercepted by the authorities." *Id*. But none of these explanations are part of the record evidence.

More to the point, under 8 U.S.C. § 1252(b)(4), which governs the standard of review as to the agency's determination regarding the availability of corroborating evidence, this court cannot reverse the IJ's determination "with respect to the availability of corroborating evidence . . . unless [this] court finds . . . that a reasonable trier of fact [would be] compelled to conclude that such corroborating evidence is unavailable." Petitioner's failure to explain to the IJ why any corroborating evidence was unavailable defeats his challenge here to the IJ's finding.

B. *Future Persecution*

As to the likelihood of future persecution, the IJ accepted that petitioner had a subjective fear of future persecution on account of his religion. But the IJ determined that the fear was not objectively reasonable because petitioner failed to demonstrate that the authorities are inclined to persecute him based upon his membership in the "house church." The IJ noted the lack of any evidence that the police have been looking for him since he left China, or that he would be persecuted because he left the country "privately." Also, the fact that petitioner's "parents . . . have continued to attend the house church without incident . . . undermines the objective reasonableness of his fear of persecution." Admin. R. at 65. The BIA agreed with the IJ's finding that petitioner's fear was not objectively reasonable.

Petitioner essentially asks this court to reweigh the evidence and determine that he made an adequate showing that his fear was objectively reasonable. "It is not our prerogative to reweigh the evidence. . . . We only determine whether a reasonable factfinder could find that [the applicant] did not have a reasonable fear of future persecution. Indeed, we only reverse that finding if a reasonable adjudicator would be compelled to conclude to the contrary." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1125 (10th Cir. 2007) (internal quotation marks omitted). No reasonable

- 8 -

adjudicator would be compelled to find that petitioner's fear was objectively reasonable.[2]

## IV. **RESTRICTION ON REMOVAL AND CAT RELIEF**

"The showing required for [restriction on] removal is more stringent tha[n] the showing required for asylum." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012). To obtain such relief, "an applicant must demonstrate that there is a clear probability of persecution" on one of five enumerated grounds. *Id*. (internal quotation marks omitted). And to be eligible for protection under the CAT, "an individual must establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id*. at 1233-34 (internal quotation marks omitted).

Having failed to meet the burden required for asylum, petitioner's claim for restriction on removal necessarily fails. *See id*. at 1234 (holding that an applicant who "fails to satisfy the lower burden of proof required for asylum . . . also fails to satisfy the higher standard of eligibility for [restriction on] removal.").

---

[2] Petitioner argued before the BIA that he established eligibility for asylum on account of his imputed anti-government political opinion. The BIA determined that petitioner's political-opinion argument was not presented to the IJ and thus the argument was waived. Petitioner makes the same argument in this court. However, "[o]n a petition for review to this court we will not permit the petitioner to circumvent proper procedural requirements of the BIA by presenting contentions that were procedurally barred by the [BIA]." *Galvez Pineda v. Gonzales*, 427 F.3d 833, 837 (10th Cir. 2005).

The IJ also found that petitioner failed to "demonstrate[] that it is more likely than not that he will be tortured if removed to . . . China." Admin. R. at 66. "Specifically, [petitioner] neither alleged past torture nor asserted a fear of torture in the future." *Id.* Nor was there any "evidence the Chinese government is currently engaged in [such practices] or that the government acquiesces to such violations." *Id.* The BIA affirmed because petitioner's "reliance on generalized evidence of violence and crime not particular to him is not sufficient to establish eligibility for protection under the CAT." *Id.* at 10. Because no reasonable adjudicator would be compelled to find that it is more likely than not that petitioner will be tortured upon his return to China, we affirm denial of relief under the CAT.

The petition for review is denied. We grant petitioner's motion to proceed *in forma pauperis*.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

- 10 -