FILED
United States Court of Appeals
Tenth Circuit

August 14, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MAURITZ EDWIN HARYONO
SIBARANI; MAGDALENA IMELDA,

Petitioners,

v.

MICHAEL B. MUKASEY, Attorney
General of the United States,

Respondent.

No. 08-9500
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

Petitioners, Mauritz Edwin Haryono Sibarani and his wife, Magdalena

Imelda, are natives and citizens of Indonesia who claim to have been persecuted

in their home country as Christians and ethnic Bataks. They separately entered

the United States in 2000, and on September 18, 2003, applied for asylum,

restriction on removal, and protection under the Convention Against Torture

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(CAT).  After a hearing, an Immigration Judge (IJ) denied their applications, and the Board of Immigration Appeals (BIA) affirmed.

Now on review, petitioners challenge the denial of relief, first claiming that they are entitled to asylum because they have been and will be persecuted in Indonesia.  The IJ denied their asylum applications after noting "that there [was] a question as to the one year [filing deadline]," Admin. R. at 66, which "was . . . one year from [petitioners'] last arrival" in the United States, *id.* at 75.  Picking up where the IJ left off, the BIA announced that it agreed that the asylum applications were untimely.  In their brief, petitioners dispute this finding, arguing that the IJ never expressly found their applications untimely, but rather denied their asylum claims on the merits.

This court generally lacks jurisdiction to review the denial of asylum applications on the basis of untimeliness.  *See* 8 U.S.C. § 1158(a)(3); *Ferry v. Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006).  Here, since the BIA produced an independent decision that constitutes the final order of removal, it is immaterial whether the IJ explicitly found the asylum applications untimely, because the BIA's conclusion that they were is the final agency decision we review.  *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).  And because petitioners present no constitutional claims or questions of law germane to the timeliness of their applications, *see* 8 U.S.C. § 1252(a)(2)(D); *Ferry*, 457 F.3d at 1130, we have no jurisdiction to review that portion of the agency's

-2-

decision. Consequently, the petition for review is dismissed to the extent it seeks review of the asylum claims.

As for the remaining avenues of relief, we review the agency's legal determinations de novo and its "findings of fact under the substantial evidence standard." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). Where, as here, a single member of the BIA issues a brief order affirming the IJ's decision, we "will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) (quotation omitted). We may therefore "consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007).

The IJ found, and the BIA agreed, that petitioners were not entitled to restriction on removal because they failed to show either past persecution or a well-founded fear of persecution. To obtain restriction on removal, petitioners must show that their "life or freedom would be threatened in [Indonesia] because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). They may satisfy this standard by showing "past persecution" or that "it is more likely than not" that they will be persecuted in the future. 8 C.F.R. § 1208.16(b)(1)-(2); *Sidabutar*, 503 F.3d at 1123-24.

Petitioners attempted to show past persecution through Mr. Sibarani's experiences. He testified that as a youth, he was beaten three times a week and once burned on his eyebrow with a cigarette. While enrolled at a university, students threw "something hard" at him from a moving car, shouted, "hey, Batak, Batak," Admin. R. 149, and forced him to expose himself because they "heard that the Batak people had very big" genitalia, *id.* at 150. Mr. Sibarani also was tripped once by a senior in the school cafeteria. When he was older, he and his parents were confronted at a stop-light by a group of men wielding knives. His mother attempted to open the car door, but it was slammed shut on her hand, causing it to swell. And on two other occasions, his car tires were slashed while he attended church. He also related an incident in which five to seven men came to his house, shook his fence, and shouted something he could not remember. Finally, Mr. Sibarani witnessed the 1998 Indonesian riots, during which he felt frightened after a church was damaged while he was inside.

The IJ correctly concluded that these incidents were not tantamount to persecution. Mr. Sibarani testified that he was beaten as a child because he was thought to be the son of a rich doctor, not because his peers held some ethnic or religious animus towards him. This rationale severs any nexus between the beatings and an enumerated basis for protection. Further, the hazing he endured at the university was troubling and degrading, but the IJ recognized that Mr. Sibarani's experiences were better characterized as harassment or

-4-

discrimination than persecution. As for the other events he described, they simply do not satisfy the standard for relief. Persecution "requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Wiransane v. Aschroft*, 366 F.3d 889, 893 (10th Cir. 2004) (quotation omitted). Mr. Sibarani's experiences were not of sufficient severity to constitute persecution. Hence, the BIA's conclusion that he failed to establish past persecution through the events with "a nexus to a protected ground under the Act" was proper. Admin. R. at 3.

Still, petitioners insist that the cumulative impact of these experiences supports a finding of past persecution. They also claim to have suffered "severe economic deprivation" because Mr. Sibarani was denied jobs due to his religion and ethnicity. Aplt. Br. at 19. The cumulative impact argument was not presented to the BIA, leaving us without jurisdiction to consider it. *See* 8 U.S.C. § 1252(d)(1) (requiring exhaustion of administrative remedies); *Sidabutar*, 503 F.3d at 1118 ("[W]e generally assert jurisdiction only over those arguments that a petitioner properly presents to the BIA."). And notwithstanding the fact that "[p]otential job loss or generalized economic disadvantage . . . does not equal persecution," *Baka v. INS*, 963 F.2d 1376, 1379 (10th Cir. 1992), Mr. Sibarani could only speculate that his difficulty obtaining work was due to his Christian name and the poor economic environment in Indonesia at the time. This

testimony does not convince us that he suffered economic persecution. *Cf. Vicente-Elias v. Mukasey*, – F.3d – , 2008 WL 2699399, at *4-5 (10th Cir. July 11, 2008) (agreeing that petitioner failed to show economic persecution where he faced poverty, limited educational opportunities, and general social discrimination in an exchange economy).

Having failed to show past persecution, petitioners are not entitled to a presumption of future persecution. *See* 8 C.F.R. § 1208.16(b)(2). They therefore attempt to show future persecution through Ms. Imelda's family dynamics. She stated that her Muslim father disapproved of her marrying a Christian man, and her politically powerful uncle, who is the governor of an Indonesian province, would not recognize her or her younger siblings. She acknowledged that her family would not physically harm them but argues that other "anti-Christian extremists . . . would be angered" by her marriage because her father is a Muslim. Aplt. Br. at 27. Petitioners further contend that their physical characteristics identify them as Christian Bataks. None of these circumstances, however, suggest that they face a clear probability of persecution. Rather, as both the BIA and IJ recognized, Ms. Imelda's family poses no risk of physical harm; her Muslim father himself married a Christian woman; and her sister, who is also a Christian, is married to a Christian man as well, continues to live safely in Indonesia, and remains in contact with her father. Moreover, Ms. Imelda continues to speak with her father, thereby rendering her concern that he has ostracized her unfounded.

To the extent petitioners suggest a "pattern or practice of persecution," 8 C.F.R. § 1208.16(b)(2)(i)-(ii), from generalized violence towards Christians and ethnic Bataks in Indonesia, the argument is unavailing. A pattern or practice of persecution entails "something on the order of organized or systematic or pervasive persecution." *Woldemeskel v. INS*, 257 F.3d 1185, 1191 (10th Cir. 2001) (quotation omitted). The record reveals violence towards Christians in Indonesia, but it also indicates that relations between Christians and Muslims actually improved in some parts of the country. Moreover, petitioners cite no evidence that ethnic Bataks have been systematically or pervasively persecuted and therefore fail to show a clear probability of persecution.[1] Having failed to show either past persecution or a clear probability of future persecution, petitioners were not entitled to restriction on removal. And because they are unlikely to be persecuted, they probably will not be tortured, thereby precluding relief under the CAT. *See Sidabutar*, 503 F.3d at 1125-26.

The petition for review is DISMISSED in part and DENIED in part.

Entered for the Court

Stephen H. Anderson
Circuit Judge

---

[1] Because petitioners fail to show a clear probability of persecution, we need not consider their internal relocation argument.