FILED
United States Court of Appeals
Tenth Circuit

December 12, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GANDA PARULIAN LUMBANTOBING;
KANERIA TAMBUNAN; BOBBY
ANGGINA TRIANDA; FAJAR TANDA
NAULY TOBING

        Petitioners,

    v.

MICHAEL B. MUKASEY, United States
Attorney General,

        Respondent.

No. 08-9549
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **KELLY**, and **McCONNELL**, Circuit Judges.

---

After examining the briefs and the appellate record, this three-judge panel has

determined unanimously that oral argument would not be of material assistance in the

determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The

case is therefore ordered submitted without oral argument.

The petitioners are a husband and wife and their two sons, all of them Christian

citizens of Indonesia, a predominantly Muslim nation. They seek review of a ruling by

---

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the Board of Immigration Appeals ("BIA") denying them a restriction on removal from the United States. The petitioners first assert a violation of their due process rights, contending that an inadequate transcript of proceedings in front of the immigration judge prevented the BIA from meaningfully reviewing their claims. They also argue that the BIA erred in finding that they had not been persecuted in the past, and that they had not proved that their life or freedom would be threatened if they returned to Indonesia.

We have no jurisdiction to entertain the petitioners' first argument. They did not raise the transcript issue before the BIA, meaning they did not exhaust their administrative remedies. On the issues of past and future persecution, the BIA's ruling is supported by substantial evidence. We therefore DENY the petitioners' petition for review.

## I.  BACKGROUND

The petitioners are Ganda Parulian Lumbantobing, his wife Kaneria Tambunan, and their sons Bobby Anggina Trianda and Fajar Tanda Nauly Tobing. In 1984, Mr. Lumbantobing and his family received death threats during the construction of the Christian church where he would serve as minister. The family endured many other threatening phone calls in the coming years. Mr. Lumbantobing testified that in May 1984, Muslims demonstrated in front of the church with "big knives." The demonstrators fought with police and military who were called to protect the church. He further testified that Muslim groups frequently demonstrate in front of the church and that the church has to pay money to them. The demonstrators also would play Muslim ceremonies over a

- 2 -

loud speaker in the church parking lot, and sometimes they threw objects at the church.

The children were intimidated over the phone and often "hassled" on their way to church. One of the boys, Mr. Trianda, testified that he was robbed and stabbed at a bus terminal because he looks "like a Chinese person." Mr. Lumbantobing ultimately sent the children to study in the United States because he feared for their safety.

After several lawful trips to the United States to visit their children, both Mr. Lumbantobing and his wife decided to remain in the country despite the fact that their visas had expired. But there were further incidents in Indonesia even after the petitioners had settled in the United States. On Christmas Eve, 2001, a bomb exploded in front of the church, injuring Mr. Lumbantobing's brother. Mr. Lumbantobing also testified that Sunday School teachers have been jailed for "Christianizing" children. Several Christian churches have been closed.

Mr. Lumbantobing said he fears for the safety of himself and his family if they are forced to return to Indonesia because he is known to be Christian through his activities at the church. He also must carry an identification card that lists him as "Protestant Christian." He said he would continue his activities with his church, despite his concerns about his safety. He said his children would not be involved in church activities.

In March and April of 2003, the petitioners filed applications for asylum. Their applications were denied, and the Department of Homeland Security began removal proceedings. At those proceedings, the petitioners renewed their applications for asylum and also sought a restriction on removal, protection under the Convention Against

Torture, and voluntary departure.

In June 2006, an immigration judge rejected most of the petitioners' applications, granting them only a voluntary departure. The judge denied their application for asylum because they filed it more than a year after the end of their legal residency and did not have an adequate explanation for the delay. The judge also denied their application for a restriction on removal. While acknowledging that the petitioners had been harassed, the judge stated that the harassment did not "rise to the level of past persecution." In addition, the judge found that it was not more likely than not that the petitioners would suffer future prosecution. He specifically noted that there were safer areas within Indonesia to which the petitioners could move. The judge therefore denied their application for a restriction on removal. Finally, he found the petitioners had not established that it was more likely than not that they would be subject to torture if they returned to Indonesia and denied protection based on the Convention Against Torture.

The petitioners appealed to the BIA, which affirmed the immigration judge's decision on all issues presented. The BIA concluded that the petitioners "have not met their burden of establishing that it is more likely than not their life or freedom would be threatened in Indonesia on account of their Christian religion." The BIA agreed with the immigration judge that the past harm suffered by the petitioners did not rise to the level of persecution, and that the respondents could avoid future violence by moving to certain parts of Indonesia. The petitioners now seek a petition for review from this court, contending that (1) the BIA's decision was based on an inadequate transcript of the

- 4 -

proceedings below and therefore does not comport with due process, and (2) they have established past persecution or the requisite likelihood of future persecution sufficient to be entitled to a restriction on removal.

## II. DISCUSSION

A.     The Due Process Claim

We do not have jurisdiction to review the petitioners' claim that their due process rights were violated because the transcript of their immigration proceedings is inadequate. According to the petitioners, the record contains 210 notations that a particular comment was "indiscernible." This inadequate record, they argue, denied them their right to meaningful appellate review.

The petitioners have raised this issue for the first time on this appeal. They have not, therefore, exhausted their administrative remedies. This court may review orders of removal only after the alien has exhausted all administrative remedies. 8 U.S.C. § 1252(a)(1). Generally, this provision means that we have jurisdiction only over arguments that were properly made before the BIA. *Vincente-Elias v. Mukasey*, 532 F.3d 1086, 1094 (10th Cir. 2008). One exception is that we will take jurisdiction over "constitutional challenges to the immigration laws," because the BIA has no jurisdiction over such claims. *Id.* However, we will not take jurisdiction over an objection to a procedural error that is framed in terms of due process, if the BIA could have remedied the problem. *See id.*

In this case, the petitioners do not challenge the constitutionality of a particular

immigration law. They allege a procedural error—that a defective transcript prevented them from obtaining fair appellate review. To the extent that the transcript was inadequate, the BIA could have remedied the situation by seeking clarification from the parties or remanding the case to the immigration judge to create a more complete record. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) (listing remand to the immigration judge as one of the BIA's options). Because the petitioners could have raised this issue in front of the BIA but did not, the petitioners have not satisfied § 1252(a)(1)'s exhaustion requirement, and we do not have jurisdiction to review this claim.

B.      The Claims Regarding Past and Future Persecution

To qualify for a restriction on removal, an alien must demonstrate "that the alien's life or freedom would be threatened in [the alien's native] country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An alien must establish that it is "more likely than not" that he will be persecuted based on one of those statutory grounds. *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (citing *I.N.S. v. Stevic*, 467 U.S. 407, 429–30 (1984)). The "more likely than not" standard is more stringent than the standard used on an application for asylum, which requires that the alien have a "well-founded fear" of persecution. *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005). Where an alien can demonstrate past persecution based on any of the factors listed in 8 U.S.C. § 1231(b)(3)(A), "it shall be presumed that the applicant's life or freedom would be

threatened in the future in the country of removal." 8 C.F.R. § 1208.16(b)(1)(i).

The BIA's decision was written by one member and is more than a summary affirmance of the immigration judge's decision. Therefore, we review the BIA's decision, but we may look to the immigration judge's opinion for further explanation or when the BIA's opinion "relied upon or incorporated it." *Sidabutar*, 503 F.3d at 1123. In reviewing the BIA's decision, we apply the substantial evidence test, meaning that we uphold the decision where it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004). The agency's findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The BIA's conclusion regarding the likelihood of future persecution is a factual finding and is therefore given that deference. *See Nazaraghaie v. I.N.S.*, 102 F.3d 460, 463 n.2 (10th Cir. 1996).

We have stated that "persecution" is "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive, and requires more than just restrictions or threats to life and liberty." *Chaib*, 397 F.3d at 1277 (quotations omitted). Applying this standard, we affirmed a denial of asylum for Polish citizens who were beaten multiple times, had their homes searched, and were poorly treated at work. One of them was conscripted into the Polish army and harassed. *Kapcia v. I.N.S.*, 944 F.2d 702, 704–05, 710 (10th Cir. 1991). We stated that those incidents did not constitute "past persecution." *Id.* at 708.

In a more analogous case, an Indonesian Christian applied for a restriction on removal, claiming past persecution. *Sidabutar*, 503 F.3d at 1117, 1124. The alien testified to repeated beatings by Muslim classmates in school, and said he was frequently confronted by Muslims who demanded money. *Id.* He said on one occasion when he had no money, he was hit and his motorcycle was burned. *Id.* We upheld the BIA's finding of no past persecution as consistent with our case law. *Id.*

In this case, the incidents that occurred while the petitioners were in Indonesia mostly fall into the category of threats or harassment, which generally do not rise to the level of persecution. *See Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003). The only incident alleged that injured a family member was the bus terminal attack on Mr. Trianda. While certainly regrettable, that attack appears to have been an isolated incident, and there is no record evidence that it was racially or religiously motivated.

In addition, to find past persecution we must find that the government either participated in the actions, or was either unwilling or unable to control the group that did. *Sidabutar*, 503 F.3d at 1124. In this case, Mr. Lumbantobing testified that the police and military were able to protect the church from Muslim demonstrators in 1984. Record documents also indicate that the Indonesian government has made efforts to control religious violence. For these reasons, we agree with the BIA that the petitioners have not proved past persecution.

The petitioners could still make their case by showing that it is more likely than not that they would suffer future persecution in Indonesia. On this point, the incidents

that occurred after they came to the United States—the bombing of their church and the jailing of Sunday school teachers—are relevant. The petitioners' argument still fails, however, because they have not established that they could not avoid those tensions by moving to a different part of Indonesia.

Where an applicant for a restriction on removal has not established past persecution, the applicant cannot establish the likelihood of future persecution "if the . . . immigration judge finds that the applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. § 1208.16(b)(2). The BIA found that recent religious violence in Indonesia has taken place mainly "in specific parts of Indonesia such as Bali and the Malukus." The BIA also found that it would be reasonable for the petitioners to move within Indonesia to avoid the violence.

We must give deference to the BIA's decision, and the petitioners have offered little evidence to rebut the BIA's finding. On the issue of whether they could move within Indonesia, their only argument is that all of Indonesia is dangerous. To support this claim, they have simply stated that Bali is considered the safest island in Indonesia, and it still has religiously motivated violence. That unsupported assertion hardly counters the BIA's finding, when the BIA cited Bali as one of the two most dangerous islands in Indonesia. Because the petitioners have not proved that they could not avoid future violence by moving, they have not established that it is more likely than not that their life

or freedom would be threatened if they were to return to Indonesia. The BIA's conclusion, therefore, is supported by substantial evidence.

### III. CONCLUSION

The petitioners have not established past persecution in Indonesia, nor have they proved that it is more likely than not that their life or freedom would be threatened if they were to return to Indonesia. For these reasons, we DENY their petition for review.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge