**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 20, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

TIONIDA SAUFNI PARDEDE;
FRANSISCA NOVELINA,

      Petitioners,

v.

ERIC H. HOLDER, JR.,[*]
United States Attorney General,

      Respondent.

No. 08-9570
(Petition for Review)

---

**ORDER AND JUDGMENT**[**]

---

Before **TACHA**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

Tionida Saufni Pardede and her daughter, Fransisca Novelina, are natives

of Indonesia and members of the Christian faith. They petition for review of a

final order of removal denying their applications for asylum, restriction on

---

[*]     Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr., is substituted for
Michael B. Mukasey as the respondent in this appeal.

[**]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

removal, and protection under the Convention Against Torture (CAT).  We lack jurisdiction over two claims and dismiss the petition as to those points.  On their remaining claims, we exercise jurisdiction under 8 U.S.C. § 1252(a)(1) and deny the petition.

## BACKGROUND

Ms. Pardede and Ms. Novelina, along with Rudi Irvan Stevanus (their 19-year-old son and brother), entered the United States on September 23, 2000.  They were joining their husband and father, Joseph Marunung, who had entered the country approximately seven months earlier.  The entire family overstayed their visas and the son returned to Indonesia.  Mr. Marunung filed for asylum and withholding of removal in February 4, 2003, with petitioners as derivative beneficiaries.  Unfortunately, Mr. Marunung died on September 8, 2004.  Over a year after Mr. Marunung's death, Ms. Pardede filed an asylum application for herself and her daughter.

Ms. Pardede was the sole witness at the hearing before the Immigration Judge (IJ).  She stated that her husband had not been permitted to work for the Indonesian government due to his religion and his political activities.  Although he was not entirely prevented from working, he was forced to accept jobs in the unstable private sector.  During his Indonesian employment, he made at least three business trips to the United States and returned to Indonesia each time.

The family lived in Jakarta in a predominately Muslim neighborhood. Between 1998 and 2000, Christians in general were threatened, churches burned, and malls looted. Ms. Pardede testified that their Muslim neighbors disrupted their at-home worship and young men threw rocks at their house. Because police guarded their church during Sunday services and intervened when a mob tried to burn it down, it was not damaged.

According to Ms. Pardede, she is reluctant to return to Indonesia because her husband is buried in the United States, she wants her daughter to complete school, and she wishes to continue her relationship with her American church. Her fear is that she would not be able to practice her religion or obtain work in Indonesia. Ms. Pardede has not had any contact with her son since he left the United States and she does not communicate with other family members who live in a small Indonesian village. In addition to her testimony, Ms. Pardede submitted documentary evidence, which included the country reports on human-rights practices published by the U.S. Department of State and other advisory opinions and materials.

The IJ announced his decision at the close of the hearing. He first denied asylum relief as untimely, in that neither the husband's nor Ms. Pardede's application met the one-year deadline or demonstrated changed or extraordinary circumstances justifying the delay. *See* 8 U.S.C. § 1158(a)(2)(B), (D). Next, he evaluated the credibility of Ms. Pardede's testimony. The IJ expressed doubts

about the basis for her fears of persecution, particularly in light of her late husband's work and travel history. He noted that Ms. Pardede's son and relatives, who share her Christian faith, live in Indonesia. Further, there are Indonesian islands where Christians are in the majority.

Based on all the circumstances, the IJ found that the family's motives for coming to the United States and remaining here were primarily economic, not religious. Though the IJ expressed his sympathy for petitioners' situation, he denied restriction on removal, declined to grant CAT protection, denied voluntary departure, and ordered petitioners removed to Indonesia.

Petitioners appealed to the Board of Immigration Appeals (BIA). They argued that the IJ erred in (1) finding no changed circumstances to justify filing outside the one-year asylum deadline; (2) failing to recognize their entitlement to restriction on removal or CAT relief; and (3) declining to grant voluntary departure to the daughter. After giving the matter single-member review, the BIA dismissed the appeal.

The BIA agreed with the IJ that the asylum applications were untimely and failed to qualify for an exception to the filing deadline. It also determined that petitioners "did not suffer any significant injury or harm in their native Indonesia." Admin. R. at 2. Because petitioners did not demonstrate past persecution on account of a protected ground or that, more likely than not, they would be persecuted or tortured upon their return to Indonesia, they did not meet

-4-

their burden of proof for restriction on removal or CAT protection.  Further, they did not meet financial requirements for voluntary departure.  The BIA dismissed the appeal.  In their petition for review, petitioners raise five issues--two of which lie outside this court's jurisdiction.

## DISCUSSION

### Lack of Jurisdiction

Petitioners challenge the BIA's determination that they failed to apply for asylum by the statutory deadline or to demonstrate qualification for an exception to the deadline.  Generally, this court lacks jurisdiction to review an asylum claim denied as untimely unless petitioners present a constitutional claim or question of law. *See Ferry v. Gonzales*, 457 F.3d 1117, 1129-30 (10th Cir. 2006) (explaining this court's jurisdictional limitations with regard to agency determinations on timeliness of asylum applications).  Petitioners assert that their case presents a legal error subject to our review--an erroneous determination of the asylum-application deadline.  Their theory is that the BIA erred in looking to the filing date of her husband's application rather than the time Ms. Pardede first became aware that his death caused the loss of her derivative status.

Even if the issue amounts to a question of law, it is outside the scope of our review.  Petitioners did not raise this legal argument before the BIA and we lack jurisdiction over an unexhausted issue.  *See* 8 U.S.C. § 1252(d)(1) (limiting judicial review to instances in which "the alien has exhausted all administrative

remedies available to the alien as of right"); *Sidabutar v. Gonzales*, 503 F.3d 1116, 1118-22 (10th Cir. 2007) (analyzing exhaustion on an issue-by-issue basis and extending the requirement to issues that could have been raised in a motion to reopen or reconsider).

Petitioners also maintain that they should have been granted voluntary departure. As a matter of statute, we have no jurisdiction to review a refusal to grant voluntary departure. *Ekasinta v. Gonzales*, 415 F.3d 1188, 1190 (10th Cir. 2005) (citing 8 U.S.C. § 1229c(f)). Because we lack jurisdiction over petitioners' asylum and voluntary-departure issues, we dismiss those claims.

**Restriction on Removal and CAT Protection**

Petitioners' remaining claims concern the denial of restriction on removal and CAT protection. Because the BIA issued its decision in a brief order signed by a single board member, 8 C.F.R. § 1003.1(e)(5), that decision is the final order of removal under review, though we "may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). This circuit considers "the ultimate determination whether an alien has demonstrated persecution [to be] a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir. 2008) (citation omitted). We examine the BIA's factual findings for substantial evidence and, under that deferential standard, they "are

-6-

conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quotation omitted).

"Generally speaking," restriction on removal blocks an alien's removal "to a particular country if he or she can establish a clear probability of persecution in that country on the basis of race, religion, nationality, membership in a particular social group, or political opinion." *Elzour v. Ashcroft*, 378 F.3d 1143, 1149 (10th Cir. 2004). "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive, and requires more than just restrictions or threats to life and liberty." *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (quotation omitted). The persecution "may be inflicted by the government itself, or by a non-governmental group that the government is unwilling or unable to control." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1337 (10th Cir. 2008) (quotation omitted).

Petitioners argue that the BIA erred in failing to find that they are likely to suffer future religious persecution if returned to Indonesia. Petitioners' documentary and testimonial evidence, however, does not compel a finding that they will be persecuted in the future. Because the agency's determination is supported by substantial evidence, we see no error in the BIA's denial of restriction on removal.

As to CAT relief, petitioners assert that the BIA improperly conflated that request with their application for restriction on removal. They also argue that

they have shown they are entitled to protection of under the CAT, which precludes removal of aliens to a country "where it is more likely than not that [they] will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Sidabutar*, 503 F.3d at 1125 (quotation omitted). A CAT claim differs from a restriction on removal claim in that "there is no requirement that the petitioners show that torture will occur on account of a statutorily protected ground." *Id*. at 1125 (quotation omitted).

We see no basis to disturb the BIA's denial of petitioners' CAT request. The BIA's decision specifically states that respondents did not demonstrate "that it is more likely than not that they would be . . . tortured upon return to Indonesia." Admin. R. at 2-3. And nothing in the record indicates the likelihood of the Indonesian government's countenancing their torture.

## CONCLUSION

For the reasons stated, the petition for review is DISMISSED in part for lack of jurisdiction and DENIED in part.

Entered for the Court

John C. Porfilio
Circuit Judge