**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 27, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

FNU HARIANTO,

      Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

      Respondent.

No. 09-9522
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

---

FNU Harianto[1] petitions for review of the decision of the Board of

Immigration Appeals ("BIA") dismissing his appeal from the decision of an

Immigration Judge ("IJ") that denied his applications for asylum, restriction on

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] FNU is an acronym for "First Name Unknown." Indonesians, like Mr. Harianto, often have a single given name.

removal, and relief under the Convention Against Torture ("CAT").  In his petition, Harianto asserts that he has suffered past persecution in Indonesia, as demonstrated by the evidence, and that his life will be endangered if he is forced to return there.  We have jurisdiction under 8 U.S.C. § 1252(a), and we DENY the petition for review.

## I.  Background

Harianto is a Chinese-Christian citizen of Indonesia who was admitted to the United States in December 1995 with authorization to remain for a temporary period not to exceed June 4, 1996.  Harianto overstayed his authorized period and, some seven years later, was sent a Notice to Appear by the Department of Homeland Security charging him with removability for staying longer in the United States than permitted.  In an appearance before an IJ, Harianto conceded removability but requested asylum, restriction on removal, and CAT protection.  Harianto based his request for relief on evidence of past beatings and robberies at the hands of Muslims, which he maintained established past persecution, and his expressed fear of future persecution in Indonesia based on his Christian religion and Chinese ancestry.

On November 26, 2007, the IJ denied Harianto's application but granted him voluntary departure with an alternative order of removal to Indonesia.  Harianto appealed to the BIA which affirmed the denial of his asylum application

as untimely.[2]  The BIA also concluded that the IJ properly denied Harianto's restriction on removal and CAT applications.  Harianto filed a timely petition for review with this court.

## II.  Scope and Standard of Review

Our scope of review is dictated by the fact that a single BIA member decided the merits of the appeal and issued an opinion affirming the IJ's decision. *See* 8 C.F.R. § 1003.1(e)(5).  In these circumstances, the BIA's order is the final order under review but "we may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it."  *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007).  "We review the BIA's factual findings under the substantial evidence standard.  The BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary.  Our role is not to re-weigh the evidence or to evaluate the credibility of witnesses."  *Ferry v. Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006) (citations and internal quotation marks omitted).  We review de novo the BIA's legal determinations.  *Herrera-Castillo v. Holder*, 573 F.3d 1004, 1007 (10th Cir. 2009).

---

[2]     Harianto does not challenge this holding on appeal, presumably in recognition of the fact that we have no jurisdiction to review such a determination absent a claim involving a legal or constitutional defect.  *Diallo v. Gonzales*, 447 F.3d 1274, 1281 (10th Cir. 2006).

## III. Restriction on Removal

Our cases establish a familiar framework for assessing entitlement to restriction on removal:

> Under 8 U.S.C. § 1231(b)(3)(A), an alien is entitled to restriction on removal if the alien's life or freedom would be threatened in th[e] country [of removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion. An alien may create a rebuttable presumption of eligibility for restriction on removal by either (1) demonstrating "past persecution" in the proposed country of removal on account of one of the protected grounds, or (2) showing that it is more likely than not that the alien would be subject to persecution on one of the specified grounds upon returning to the proposed country of removal.

*Sidabutar v. Gonzales*, 503 F.3d 1116, 1123-24 (10th Cir. 2007) (internal quotation marks and citations omitted).

### A. Past persecution

First, Harianto asserts that he has properly established past persecution entitling him to the presumption of restriction on removal. After reviewing the BIA's conclusion that Harianto failed to show past persecution, we find no legal error.

The BIA decision explained,

> [r]egarding past persecution, we find that the acts described by the respondent – including being pushed off his bicycle; being mugged, beaten, and taunted for being Chinese by ethnic Indonesians when he was 14 years old; being asked for money after leaving church and subsequently having his Bible torn and being beaten; and having a rock thrown at his church – were insufficient to rise to the level of past persecution.

Admin. R. at 3 (citations to the record omitted).

The BIA's conclusion that Harianto did not suffer past persecution based on these findings is consistent with the law of this Circuit. "Although persecution is not defined in the INA, we have held that a finding of persecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004) (internal quotation marks omitted).

We have upheld the IJ's finding of no past persecution where the alien reported being robbed, fondled, and suffered a minor head injury, *see Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005), and where the alien had twice been detained for two-day periods during which he was beaten and interrogated, whose parents' home had been searched, whose work locker had been repeatedly broken into, and who had been assigned poor work tasks, denied bonuses, and conscripted into the army, where he was constantly harassed, *see Kapcia v. INS*, 944 F.2d 702, 704-05, 707 (10th Cir. 1991). In contrast, we have suggested that an asylum applicant's severe beating and ten-month imprisonment on account of his political opinion constituted persecution. *See Nazaraghaie v. INS*, 102 F.3d 460, 463-64 (10th Cir. 1996).

Here, Harianto has suffered, at most, from several robberies, two minor injuries, and incidents of harassment. The BIA correctly determined that these incidents do not rise to the level of past persecution.

## B. Probability of Future Persecution

The fact that Harianto is not able to demonstrate past persecution will not doom his cause if he can show that he has a clear probability of being persecuted in the future in Indonesia. *Sidabutar*, 503 F.3d at 1125. To do that, Harianto must "establish a 'clear probability of persecution' through presentation of 'evidence establishing that it is more likely than not that [he] would be subject to persecution on [account of race, religion, nationality, membership in a particular social group, or political opinion].'" *Woldemeskel v. INS*, 257 F.3d 1185, 1193 (10th Cir. 2001) (quoting *INS v. Stevic*, 467 U.S. 407, 429-30 (1984)). To establish that probability, Harianto argues that "[d]ue to the rise in anti-Chinese and anti-Christian extremism and inter-religious and inter-racial conflicts in Indonesia, Petitioner would be at serious risk for harm, if not death, if forced to return to Indonesia." Opening Br. at 16. Relying on various State Department reports and other evidence in the record, the BIA rejected this argument. We do likewise.

The BIA held,

> [r]egarding the respondent's religious claim, the United States Department of State's *2006 Country Reports on Human Rights Practices for Indonesia*, dated March 2007, identifies a few sporadic

incidents of tension between religious groups, but also indicates that there have been improvements in the relations between religious groups. The incidents of conflict described in the *Country Reports* do not rise to the level of persecution. Further, the United States Department of State's *Issue Paper: Christians in Indonesia* indicates that in most parts of Indonesia, "people generally are able to worship as they wish with no interference from the state or their neighbors of other faiths," but that religious violence does occur in isolated areas.

. . . .

Similarly, the record indicates that although there is ongoing discrimination against Indonesians of Chinese ethnicity, that discrimination does not rise to the level of persecution. For example, the *Country Reports* indicated that "[i]nstances of discrimination and harassment of ethnic Chinese continued to decline compared with previous years" (Exh. 4, *Country Reports*, at 25). The respondent's evidence to the contrary is quite dated and does not reflect current country conditions. Therefore, the respondent has not established that he is more likely than not to face persecution in Indonesia.

Admin. R. at 4 (citations omitted).

To counter this conclusion, Harianto asks us to accept a broad, unsupported general proposition: "Petitioner faces at least a 51% chance of persecution if he is forced to return to Indonesia." Opening Br. at 15. That, according to Harianto, is because he is obviously and immutably Chinese and must carry a card identifying himself as a Christian. The BIA, however, never disputed that Harianto is a Chinese Christian. Instead it relied on State Department evidence that both ethnic and religious tensions in Indonesia have eased and no longer pose a substantial threat of persecution.

Harianto also points to other documentation to rebut the conclusions of the BIA and corroborate his own claim. Our role here, however, is not to reweigh the evidence but merely to determine whether the conclusions of the BIA are supported by substantial evidence. *Sidabutar*, 503 F.3d at 1125. We will only reverse if every reasonable fact-finder would be compelled to find past persecution or a clear probability of future persecution based on Harianto's evidence. *See Tulengkey*, 425 F.3d at 1281. Harianto has failed to meet that demanding standard.

Harianto urges us to follow the Ninth Circuit's reasoning in *Sael v. Ashcroft*, 386 F.3d 922, 925-29 (9th Cir. 2004), which would characterize Harianto as a member of a "disfavored group" and thus lessen the showing he would need to make of particularized risk of future persecution. Even if we did adopt the Ninth Circuit's lower standard for "disfavored groups" and chose to apply it to Christians or Chinese Christians in Indonesia, Harianto has not shown that he, "in particular, is likely to be targeted as a member of that group," *Sael*, 386 F.3d at 925. The "personal connection to the general persecution" that was abundantly present in *Sael*, 386 F.3d at 929, is lacking in this case. We thus have no occasion to accept or reject the "disfavored groups" approach of *Sael*.

With regard to his application for relief under the CAT, we agree with the BIA that Harianto has not established it is more likely than not that he will be tortured in Indonesia.

The Petition for Review is DENIED.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge