**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 4, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

HAMZA BALLAD,

        Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

        Respondent.

No. 13-9541
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **MATHESON**, Circuit Judges.

Hamza Ballad, a native and citizen of Morocco, seeks review of an order

entered by the Board of Immigration Appeals (BIA) affirming the removal order of

an Immigration Judge (IJ). The BIA dismissed Mr. Ballad's asylum claim as

untimely, and denied his claims for restriction on removal and protection under the

Convention Against Torture (CAT). We dismiss the asylum claim for lack of

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

jurisdiction, and, exercising jurisdiction under 8 U.S.C. § 1252, we deny the claims for restriction on removal and CAT protection.

## I. BACKGROUND

Mr. Ballad legally entered the United States in May 2008. He conceded that he remained after his authorized stay expired and that he is subject to removal for having overstayed his visa. On June 15, 2010, he filed his application for asylum, restriction on removal, and CAT protection.

At a hearing before the IJ, Mr. Ballad testified that when he was fourteen years old, he was attacked by a group of Muslims who stole money from him. His parents filed a police report. He also testified that when he was seventeen, his parents punished him severely, including beating him and imprisoning him in a pantry, for not engaging in Muslim prayers and practices. He further testified that at age eighteen during Ramadan in September 2001, a group of Muslims attacked him because he was eating before sundown, contrary to Muslim doctrine. He did not seek assistance from the police.

Mr. Ballad testified that he married a Catholic woman in January 2010. He stated that if he returned to Morocco, he would share his Christian faith with others and that his family would expect him to marry a Muslim woman.

The IJ found Mr. Ballad's testimony not credible, citing discrepancies between his testimony and his application documents; inconsistencies in his testimony concerning his in-home imprisonment, such as whether he was let out to eat and go to

school; the implausibility that a seventeen-year-old would repeatedly return to in-home captivity after having been released to attend school; and the fact that Ramadan 2001 was in November, not September. The IJ characterized the robbery when he was fourteen as a general crime that did not appear to be based on Mr. Ballad's beliefs. In addition, the IJ found it inconsistent that Mr. Ballad continued to send $500 to $1,000 to his parents each month despite their maltreatment of him.

The IJ found that Mr. Ballad had not established the requisite changed or extraordinary circumstances for an exception to the one-year period to file an asylum application and, further, that he had not stated sufficient grounds for asylum, restriction on removal, or CAT protection. Accordingly, the IJ ordered Mr. Ballad removed to Morocco.

Mr. Ballad timely appealed to the BIA, challenging the IJ's credibility determination and asserting that his parents' abuse and his own conversion to Catholicism warranted relief. The BIA affirmed the IJ's findings and removal order.

## II. **UNTIMELY ASYLUM CLAIM**

To be considered for asylum, an alien is required to demonstrate by clear and convincing evidence that his application was filed within one year after his arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Mr. Ballad did not file his asylum application until two years after he arrived in the United States. An asylum application may nevertheless be considered "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances

- 3 -

which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [one-year period]." *Id.* § 1158(a)(2)(D). "Changed circumstances," within the meaning of § 1158(a)(2)(D), include "[c]hanges in the applicant's circumstances that materially affect the applicant's eligibility for asylum." 8 C.F.R. § 1208.4(a)(4)(i)(B).

This court generally lacks jurisdiction to review an IJ determination about the timeliness of an asylum application. 8 U.S.C. § 1158(a)(3); *Diallo v. Gonzales*, 447 F.3d 1274, 1281 (10th Cir. 2006). We do have jurisdiction, however, to review a claim that the BIA's application of the one-year deadline violated an alien's constitutional rights. 8 U.S.C. § 1252(a)(2)(D); *Diallo*, 447 F.3d at 1281.

Mr. Ballad asserts that his conversion to Catholicism beginning in March 2010, and his marriage to a Catholic woman in January 2010, qualify as changed circumstances that materially affected his eligibility for asylum. He maintains that if returned to Morocco, he will suffer social ostracism due to his Catholic faith. In addition, he points out that anti-Islam proselytizing in public would subject him to arrest.

In his brief to this court, Mr. Ballad does not claim that the BIA committed constitutional or legal error in refusing to excuse his late filing. Rather, he argues that the evidence demonstrated that he would be persecuted due to his conversion to Catholicism. In particular, he challenges the agency's finding that his testimony was not credible. Because his arguments concerning the merits of his asylum claim are

"directed solely at the agency's discretionary and factual determinations, [they] remain outside the scope of judicial review," *Diallo*, 447 F.3d at 1281.[1] We dismiss Mr. Ballad's asylum claim for lack of jurisdiction.

## III. **RESTRICTION ON REMOVAL**

The time limit for filing an asylum application does not apply to an application for restriction on removal. *Wei v. Mukasey*, 545 F.3d 1248, 1250 (10th Cir. 2008); 8 C.F.R. § 208.4(a). "To obtain restriction on removal, the alien must demonstrate that [his] 'life or freedom would be threatened in [the proposed country of removal] because of [his] race, religion, nationality, membership in a particular social group, or political opinion.'" *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (quoting 8 U.S.C. § 1231(b)(3)(A)).

> An alien may create a rebuttable presumption of eligibility for restriction on removal by either (1) demonstrating past persecution in the proposed country of removal on account of one of the protected grounds; or (2) showing that it is more likely than not that the alien would be subject to persecution on one of the specified grounds upon returning to the proposed country of removal.

*Sidabutar v. Gonzales*, 503 F.3d 1116, 1123-24 (10th Cir. 2007) (citations and internal quotation marks omitted).

We review the BIA's decision to determine whether it is supported by substantial evidence, considering the record as a whole. *Neri-Garcia v. Holder*,

---

[1] Mr. Ballad's brief states that the BIA erred as a matter law in denying his application, Aplt. Br. at 10, but this conclusory statement does not change the substance of his arguments that relate only to the agency's credibility determinations and evidence weighing.

696 F.3d 1003, 1008 (10th Cir. 2012). "Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Sarr v. Gonzales*, 474 F.3d 783, 788-89 (10th Cir. 2007) (internal quotation marks omitted). We neither reweigh the evidence nor assess witness credibility. *Id.* at 789. The BIA issued a single-member decision. Therefore, "although we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Maatougui v. Holder*, 738 F.3d 1230, 1237 n.2 (10th Cir. 2013) (internal quotation marks, brackets and ellipsis omitted).

Mr. Ballad claims past persecution based on being robbed at the age of fourteen, his parents' punishing him for failing to observe Muslim practices when he was seventeen and living at home, and the beating he sustained during Ramadan 2001 by Muslims. The IJ found Mr. Ballad's reports of these incidents to be not credible. The BIA agreed. An IJ "must give specific, cogent reasons" for his credibility determination, a determination we review for substantial evidence. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (internal quotation marks omitted).

We conclude substantial evidence supports the IJ's finding that Mr. Ballad's testimony was not credible. As the BIA noted, Mr. Ballad's hearing testimony differed from his written documents concerning whether his family was required to move frequently due to threats from violent Muslim groups; and his claim of parental abuse and in-home imprisonment was inconsistent with his testimony that he was let

out to eat and go to school. Less persuasive but nonetheless having support in the record were the IJ's findings that Mr. Ballad's practice of sending money home to his parents was inconsistent with his claim of parental abuse; and that the alleged Ramadan beating for violating Muslim doctrine had not occurred during Ramadan. We conclude that Mr. Ballad failed to meet his burden of establishing past persecution on account of one of the statutorily protected grounds.

Based on this conclusion, Mr. Ballad is not entitled to a presumption that his life or freedom would be threatened in the future. *See* 8 C.F.R. § 1208.16(b)(1)(i) (stating if alien demonstrates past persecution, "it shall be presumed that [his] life or freedom would be threatened in the future in the country of removal"). Even so, we consider his claim of a well-founded fear of future persecution. *See id.* § 1208.16(b)(2). "Without a showing of past persecution, an alien must demonstrate that it is more likely than not that he will be individually persecuted in the future." *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009). "For a fear of future persecution to be well-founded, it must be both subjectively genuine and objectively reasonable." *Ritonga v. Holder*, 633 F.3d 971, 976 (10th Cir. 2011) (internal quotation marks omitted).

Mr. Ballad bases his claim of future persecution on his conversion to Catholicism and his marriage to a Catholic woman, which he contends will subject him to social ostracism. He does not challenge the BIA's observation that Moroccan law does not prohibit interfaith marriages. The BIA thus found that any

discrimination and ostracism Mr. Ballad may suffer does not rise to the level of persecution. This finding is supported by substantial evidence. *See Zehatye v. Gonzales*, 453 F.3d 1182, 1190 (9th Cir. 2006) (holding "some degree of social ostracism and economic hardship due to her religion did not rise to the level of persecution"); *Chakir v. Gonzales*, 466 F.3d 563, 570 (7th Cir. 2006) (stating that persecution does not include treatment regarded as unfair or unjust); *cf. Tulengkey*, 425 F.3d at 1280 (noting "denigration, harassment, and threats" are insufficient to establish persecution).

Mr. Ballad also claims that he would be arrested in Morocco for proselytizing a non-Islam religion in public. The record indicates that it is illegal in Morocco to attempt to convert a Muslim to another religion. Admin. R. at 433. But Mr. Ballad did not testify that he intended to convert Muslims or even that he wished to proselytize in public. Rather, he said he would share his faith with others by telling them about his conversion experience. *Id.* at 257-58. Substantial evidence in the record supports a conclusion that Mr. Ballad would not be persecuted based on his religious beliefs.

After reviewing the record, we cannot conclude that a reasonable factfinder would be compelled to find it more likely than not that Mr. Ballad would be persecuted upon his return to Morocco. Accordingly, the BIA did not err in finding that he failed to show past persecution or a well-founded fear of persecution.

## IV.  CONVENTION AGAINST TORTURE

"Article 3 of the Convention Against Torture prohibits the [return] of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (internal quotation marks omitted).  "A claim under the CAT differs from a claim for asylum or [restriction on] removal . . . because there is no requirement that the petitioner[] show that torture will occur on account of a statutorily protected ground." *Sidabutar*, 503 F.3d at 1125 (internal quotation marks omitted).

Having affirmed the BIA's finding that Mr. Ballad has not met his burden to demonstrate that he will face persecution by the Moroccan government, we also conclude that the BIA's denial of CAT relief is supported by substantial evidence. *See id.* at 1125-26.

## V.  CONCLUSION

Mr. Ballad's asylum claim is dismissed for lack of jurisdiction.  The petition for review is otherwise denied.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge