**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MUHAMMAD ASIF,

     Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

No. 19-9610
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MURPHY** and **PHILLIPS**, Circuit Judges.
_____

Muhammad Asif petitions for review of a decision by the Board of

Immigration Appeals (BIA) denying his applications for asylum, withholding of

removal, and protection under the Convention Against Torture (CAT).  Our

jurisdiction arises under 8 U.S.C. § 1252(a).  We deny the petition for review.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

Asif is a native and citizen of Pakistan.  He entered the United States on a nonimmigrant visitor visa in 2009, accompanying his sister who was undergoing medical treatment in this country.  He remained in the United States beyond his authorized six-month period, and he was served with a notice to appear in 2010.  Asif conceded removability but filed applications for asylum, withholding of removal, and protection under the CAT.  He testified at a hearing before an immigration judge (IJ), who found that his testimony was credible.  Asif also submitted affidavits from his family members and evidence of the country conditions in Pakistan.

### A.    IJ's Factual Findings

The IJ made the following factual findings.  Asif was born in Peshawar in the province of Khyber Pakhtunkhwa (KP).  He and his family ran a number of businesses, including a motorbike dealership, a mobile phone shop, and a real estate business.

The Pakistani Taliban (TTP) harmed or killed thousands of people in the KP between 2008 and 2014.  In particular, prior to the elections in 2013, the TTP sought to harm the more liberal and secular political parties, including the Awami National Party (ANP).  The IJ found that, in response to increasing violent attacks by the TTP, the government implemented a plan giving law enforcement and the military broad powers to arrest and detain militants.  As of 2016-17, the number and scale of TTP attacks had significantly decreased, but the security situation remained tenuous, and

2

attacks on civilians, government officials, the military, and law enforcement remained common.

While in Pakistan, Asif participated in ANP meetings and rallies. He regularly hung banners, handed out stickers, served food, and arranged the logistics of local ANP meetings. Although Asif was affiliated with the ANP, he was not a member of the party. He explained that, as a young person, he was expected to assist the party as a worker. At a certain point, after showing his commitment, he could ask or be invited to become a member. But neither path to membership had occurred by the time he left Pakistan.

Asif was close to a local political leader, Alamzeb Khan, who lived next door to Asif's family and regularly met with Asif's father and uncle at the family's home. Khan was a member of the ANP, as well as an elected member of the provincial assembly. Asif had worked on Khan's election campaign. In 2009, Khan was killed in a bomb attack in front of his house within minutes of leaving Asif's home. This attack occurred approximately two weeks before Asif left Pakistan.

Within weeks of Asif's arrival in the United States, a note from the TTP was thrown under the door of the family's mobile phone business in Pakistan. The note accused Asif of being an agent of America and threatened that he would be killed upon returning to Pakistan if he did not stop his work for the Americans. A short while later, the TTP left a second note stating its disapproval of Asif's family for allowing its sons to travel to the United States and threatening consequences if the family did not make them behave as good Muslims.

3

Asif's brothers also received threatening phone calls from men claiming to be TTP members. The calls were made to the mobile phone shop's business line and to Asif's cell phone that he left in Pakistan when he traveled to the United States. The callers threatened Asif and his family with harm if Asif did not immediately return to Pakistan and demanded that Asif be handed over to the TTP upon his return. On one occasion, a caller mentioned Asif's ANP affiliation. These calls continued until at least the summer of 2011.

In March 2010, men claiming to be members of the TTP assaulted one of Asif's brothers. The attackers threatened to harm him further if Asif did not return to Pakistan. TTP members also stopped Asif's father in the market to ask when Asif would return to Pakistan. They continued to follow his father until eight or ten months before Asif's removal hearing in 2017.

## B. IJ and BIA Decisions

The IJ denied all three of Asif's applications for relief, and the BIA dismissed his appeal. Asif based his claim for asylum on a well-founded fear of future persecution in Pakistan on account of (1) his political opinion and (2) his membership in a particular social group, specifically: "politically active Pakistani men who have resided in the United States for an extended period of time." Admin. R., Vol. 1 at 3 (internal quotation marks omitted). The BIA agreed with the IJ that (1) Asif's proposed particular social group was not cognizable; (2) he did not establish, based upon the TTP's threats against him and his family, that the harm he feared would be on account of his political opinion; and (3) he did not establish there

4

was a pattern or practice of persecution of persons similarly situated to him in Pakistan. The BIA further agreed with the IJ that Asif failed to show an objectively reasonable possibility that the TTP would seek to harm him or that the harm he feared would be inflicted by a private actor that the Pakistani government is unwilling or unable to control.

Because Asif failed to meet his burden of proof to establish his eligibility for asylum, the BIA held that he also had not satisfied the higher standard for withholding of removal by demonstrating a clear probability of persecution. And the BIA agreed with the IJ that Asif did not establish his eligibility for protection under the CAT by showing it was more likely than not that anyone would torture him by or with the acquiescence of a public official upon his return to Pakistan.

## II.    Analysis

We review the BIA's full-panel decision in this case, which superseded the IJ's decision. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir. 2006).[1]

> When reviewing a BIA decision, we search the record for substantial evidence supporting the agency's decision. Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole. Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary.

*Sidabutar v. Gonzales*, 503 F.3d 1116, 1122 (10th Cir. 2007) (citations, brackets, and internal quotation marks omitted).

---

[1] We note that one Board member dissented without opinion.

## A.       Asylum

To be eligible for asylum, Asif must demonstrate that he has a well-founded fear of persecution based upon a protected ground. *See Rivera-Barrientos v. Holder*, 666 F.3d 641, 645-46 (10th Cir. 2012); 8 U.S.C. § 1101(a)(42)(A). "For persecution to be on account of a statutorily protected ground, the victim's protected characteristic must be central to the persecutor's decision to act against the victim." *Rivera-Barrientos*, 666 F.3d at 646 (brackets and internal quotation marks omitted). Asif claims a fear of persecution on two statutorily protected grounds: (1) his political opinion based upon his affiliation with the ANP political party, and (2) a particular social group defined as "politically active Pakistani men who have resided in the United States for an extended period of time." Admin. R., Vol. 1 at 3 (internal quotation marks omitted).

### 1.       Fear of Persecution on Account of Membership in a Particular Social Group

The BIA held that Asif failed to demonstrate a well-founded fear of persecution based upon his membership in a particular social group because his proposed group is not cognizable. First, the group lacks particularity because "the phrase 'extended period of time' is too amorphous and indefinite." *Id.*; *see Rivera-Barrientos*, 666 F.3d at 649 ("[I]t is reasonable to read the statute as limiting its recognition of 'social groups' to those that can be defined with some specificity— to encourage amorphous definitions would likely yield inconsistent, arbitrary, and over broad results."). Second, the evidence did not establish that Pakistani society

6

views Asif's proposed group as socially distinct. *See Rivera-Barrientos*, 666 F.3d at 650-51 (stating the question as whether "citizens of the applicant's country would consider individuals with the pertinent trait to constitute a distinct social group").

Asif does not address the BIA's holding that his proposed social group lacks particularity. And while he argues that greater Pakistani society views the group as socially distinct, he does not point to any evidence supporting that contention. *See* Pet. Opening Br. at 18-19. Consequently, Asif fails to show error in the BIA's determination that his proposed particular social group is not cognizable.[2]

### 2.      Fear of Persecution on Account of Political Opinion

Asif can demonstrate a well-founded fear of persecution on account of his political opinion by showing either an individualized risk of harm or "a pattern or practice . . . of persecution of a group of persons similarly situated to [him] on account of . . . political opinion" if he also "establishes his . . . inclusion in, and identification with, such group of persons such that his . . . fear of persecution upon return is reasonable," 8 C.F.R. § 1208.13(b)(2)(iii). Assuming that Asif's political

---

[2] Asif also appears to assert that the BIA failed to consider his contention that he fears persecution on account of his membership in the ANP, which he contends is a cognizable social group. *See* Pet. Opening Br. at 19. Asif did not exhaust this argument in his BIA appeal. *See* Admin. R., Vol. 1 at 33-34. We therefore lack jurisdiction to consider it. *See Sidabutar*, 503 F.3d at 1118 ("This Court may only retain jurisdiction over claims challenging a final order of removal if the alien has exhausted all administrative remedies available as of right. . . . [W]e generally assert jurisdiction only over those arguments that a petitioner properly presents to the BIA." (ellipsis and internal quotation marks omitted)); *see also Rivera-Barrientos*, 666 F.3d at 647 n.2 (declining to consider a claim based on different social-group characteristics than those raised before the BIA).

7

activity with the ANP amounted to actual or imputed political opinion, the BIA held that he failed to demonstrate a well-founded fear of persecution in Pakistan based upon his political opinion.

The BIA first held there was insufficient evidence that the TTP was motivated by Asif's political opinion. Considering the content of the threats against Asif and his family, the BIA affirmed the IJ's finding "that the TTP was motivated by its own anti-American views, not [Asif's] political views." Admin. R., Vol. 1 at 4; *see I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 482 (1992) ("The ordinary meaning of the phrase 'persecution on account of . . . political opinion' in [§ 1101(a)(42)] is persecution on account of the *victim's* political opinion, not the persecutor's."). The BIA noted that the TTP's threats mentioned Asif's affiliation with ANP only once and instead focused on his "time in the United States and his work to please Americans against Islamic interests." Admin. R., Vol. 1 at 4. The BIA therefore held that he failed to "establish[] the requisite nexus between the harm he fears in Pakistan and a political opinion." *Id.*

Asif does not address or challenge the BIA's no-nexus finding grounded on the content of the TTP's threats targeting him and his family. *See* Pet. Opening Br. at 19-21.[3] He therefore has waived any argument of error in that finding. *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that

---

[3] Elsewhere in his brief, Asif does argue that the TTP's threats show that his fear of persecution is objectively reasonable. *See* Pet. Opening Br. at 15-16. But he must demonstrate an objectively reasonable fear of persecution *on account of* his political opinion. *See Rivera-Barrientos*, 666 F.3d at 645-46.

arguments inadequately briefed in the opening brief are waived." (brackets and internal quotation marks omitted)).

Asif instead argues that there is a nexus between the harm he fears and his political opinion based upon his affiliation and activities with ANP and his close connection to some ANP leaders. *See* Pet. Opening Br. at 21 (asserting that the TTP "likely knows that Asif is a supporter of the ANP and associated with slain ANP leaders and that it might also target and kill him because of his political opinions"). He maintains that, as a worker for the ANP, he is similarly situated to the ANP members and leaders who are likely to be harmed by the TTP.

The BIA disagreed, holding that Asif did not show that there is a pattern or practice of persecution of a group of persons similarly situated to him. *See* § 1208.13(b)(2)(iii) (permitting a finding of a well-founded fear of persecution based upon a showing of a pattern or practice of persecution of a group to which the applicant is similarly situated). Noting the evidence that the TTP has targeted ANP leaders and party members holding political office, the BIA concluded that Asif failed to establish that his position as a worker for ANP makes him similarly situated to such party leaders and assembly members.

Asif asserts there is substantial evidence contrary to the BIA's finding, but he does not actually cite any evidence to support that contention. *See* Pet. Opening Br.

at 14.[4]  Later in his brief, Asif emphasizes his connection to certain party leaders and the extent of his participation in ANP activities, which consisted of making and posting banners, serving food at events, attending meetings and rallies, arranging activities, and distributing flyers door to door.  *See id.* at 21.  He does not, however, demonstrate that this evidence would compel any reasonable adjudicator to conclude that he is similarly situated to the ANP leaders who have been targeted by the TTP. *See Sidabutar*, 503 F.3d at 1122 ("Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." (internal quotation marks omitted)).

Asif has not shown error in the BIA's holding that he failed to demonstrate a well-founded fear of persecution in Pakistan, either on account of his membership in a particular social group or on account of his political opinion.[5]  We therefore affirm the BIA's denial of his application for asylum.

**B.     Withholding of Removal**

The BIA held that because Asif failed to meet his burden of establishing eligibility for asylum, he also has not satisfied the higher standard for a grant of withholding of removal, which required him to demonstrate a clear probability of

---

[4] Asif also asserts that there is a pattern or practice of persecution of "those who oppose the [TTP's] political agenda."  Pet. Opening Br. at 14.  He does not develop this contention or cite any evidence supporting it.

[5] Because Asif failed to demonstrate a well-founded fear of persecution on account of a statutorily protected ground, we do not address his other arguments: that his fear of persecution is objectively reasonable, that the Pakistani government is unable to control the TTP, and that he merits a favorable exercise of discretion.

10

persecution.  *See Woldemeskel v. I.N.S.*, 257 F.3d 1185, 1193 (10th Cir. 2001).

Having affirmed the BIA's denial of asylum, we also affirm its denial of withholding

of removal.

### C.       Protection Under the CAT

"Article 3 of the Convention Against Torture prohibits the return of an alien to

a country where it is more likely than not that he will be subject to torture by a public

official, or at the instigation or with the acquiescence of such an official."

*Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (brackets and internal

quotation marks omitted).  "Willful blindness suffices to prove acquiescence." *Id.*

(alteration and internal quotation marks omitted).

The BIA held that Asif did "not establish[] that it is more likely than not that

he will be tortured in Pakistan, by or with the acquiescence (to include the concept of

willful blindness) of a public official in Pakistan."  Admin. R., Vol. 1 at 5.  Pointing

to his brother's assault by the TTP, their threats of harm to his family if he did not

return to Pakistan, and their threat to kill Asif when he does return, Asif asserts that

he "has therefore established that he is entitled to relief under the CAT."  Pet.

Opening Br. at 27.  But he does not address or challenge the BIA's holding that he

failed to show that any torture by the TTP would be by or with the acquiescence of

the Pakistani government.[6]  We therefore affirm the BIA's denial of protection under

the CAT.

---

[6] In his reply brief, Asif argues that the Pakistani government is unable to
control the TTP.  He included this argument and evidence in his opening brief but

## D.    Motion to Supplement the Record

We deny Asif's motion to supplement the record, in which he requests that we take judicial notice of a Pakistan Travel Advisory issued by the United States Department of State in January 2020. "Because this material was not included in the record, we decline to consider it in our decisionmaking." *Ritonga v. Holder*, 633 F.3d 971, 977 n.3 (10th Cir. 2011) (declining to consider evidence of country conditions that was not in the record); *see also* 8 U.S.C. § 1252(b)(4)(A) ("[T]he

only with respect to his asylum claim. *See* Pet. Opening Br. at 21-25. We do "not ordinarily review issues raised for the first time in a reply brief." *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

Even were we to consider the same evidence in the context of his CAT claim, Asif does not show that any reasonable adjudicator would be compelled to conclude that he will be tortured in Pakistan by or with the acquiescence of the Pakistani government. He argues based on evidence that he presented with his BIA appeal that the TTP continues to carry out large-scale attacks throughout Pakistan and in the KP. But the BIA construed his submission of new evidence as a motion to remand to the IJ, and it declined to remand because Asif failed to show that the new evidence would likely change the outcome of his case. Asif does not challenge that ruling.

Moreover, Asif acknowledges the BIA's citation to evidence that the Pakistani government has implemented strategies to combat terrorist organizations. *See* Admin. R., Vol. 1 at 5 (noting counterinsurgency and counterterrorism operations by the military to weaken terrorist strongholds and avert recruitment, including seizing weapons and arresting TTP commanders). He argues this evidence fails to show that the government is capable of controlling the TTP, but he does not demonstrate error in the BIA's finding that the government is not willfully blind to torture committed by the TTP. *See, e.g.*, *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (noting the government's efforts to protect potential victims of torture by paramilitary groups in holding alien failed to show the requisite government acquiescence).

12

court of appeals shall decide the petition only on the administrative record on which the order of removal is based.").

## III.    Conclusion

The petition for review is denied.  The motion to supplement the record is denied.

Entered for the Court


Gregory A. Phillips
Circuit Judge